[No. 21773.   Department One.   October 29, 1929.]

NELLIE GUNDERSON, *Appellant,* v. S. R. GREEN, *as Administrator, Respondent.*[1]

[1]Reported in 281 Pac. 731.

*Gleeson & Gleeson,* for appellant.

*Burcham & Blair* and *Roy A. Redfield,* for respondent.

FULLERTON, J.—On November 16, 1916, Alice S. Spurgin, then Alice S. Bowen, made and delivered to one B. F. Williamson her promissory note for $5,000, due ten years after its date. The provision for interest was expressed by the phrase, "Interest 5% from date." It was testified by Williamson that the maker of the note, on November 1, 1926, paid the interest on the note to that date in full, and paid $200 on the principal sum of the note. The note bears an indorsement to that effect, and an indorsement, apparently made at the same time, extending the time of payment of the note for one year. On November 6, 1926, Williamson transferred the note to the appellant, Gunderson, indorsing it without recourse.

Mrs. Spurgin died in July, 1927, and the respondent, Green, was appointed administrator of her estate. In due time, Gunderson presented the note as a claim against the estate. The claim was rejected by the administrator, and the present action was thereupon instituted to enforce its allowance as a legitimate claim. On the trial of the action, the court inquired into the consideration given for the note, and finding that it was given for services rendered, further inquired into the value of such services, concluding that they had a reasonable value of $750, but no more, and allowed a recovery for that sum. Gunderson appeals.

It will be noted that the note was indorsed and delivered to the appellant prior to its maturity, and the first question that naturally arises is whether she is a holder in due course. The trial court held that she

was not such a holder, and we are constrained to follow its holding. While Williamson testified that he "imagined" he owed the appellant, at the time of the transfer of the note, something like $3,000, arising out of their mutual dealings, and that the note was transferred in satisfaction of the obligation, neither he nor the appellant could recall anything more than the general nature of the dealings which gave rise to the indebtedness. The appellant did testify that Williamson borrowed money from her from time to time, giving her, as evidence of the loans, what she called "receipts," and which Williamson explained were "due bills," but how many of these were outstanding at the time of the transfer, or the amount that was due upon them, neither had the slightest recollection. But, perhaps, the more conclusive answer to the contention is that there are matters appearing in the record which indicate that Williamson did not, by the transfer, part with his entire interest in the note. It may be noted here that the court, in a special finding, rejected the testimony of Williamson to the effect that Mrs. Spurgin had paid the interest on the note and $200 on the principal.

On the main question involved, the consideration given for the execution of the note, the appellant contends that it is not a matter into which the courts are permitted or empowered to inquire. She argues that, since the note was given for personal services, and since such services are at best incapable of exact measurement, the parties to the contract had the right themselves to fix their value, and the courts cannot interfere therewith without making a new contract for the parties. But the rule the appellant invokes is not one of universal application. The negotiable instruments act provides (Laws of 1899, p. 346, § 28) [Rem. Comp. Stat., § 3419]:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

It may be that the courts will not apply the rule the statute announces, in the absence of a showing of fraud practiced by the payee of the note on the payor, or in the absence of a showing of a fiduciary or of an intimate confidential relation between the parties, existing at the time the note is made and delivered, equivalent to a fiduciary relation. But this question we need not here determine. The trial court found that there was a relation of trust and confidence existing at the time of the execution of the note between Williamson and Mrs. Spurgin which enabled him to make a bargain with her that she would not otherwise make. Williamson was, at the time, in the brokerage business. Mrs. Spurgin was the keeper of a boarding house, and dealt somewhat in that character of property.

Williamson not only acted as her agent in her business transactions, but was the person to whom she resorted for advice and aid in all of her contemplated business dealings; and she also advised with him on her private personal relations—matters not usually taken up with any one except where an extremely confidential relation exists. The note itself bears evidence that it was not purely a business transaction. Williamson was not then in such a financial condition that the payment of the considerable sum called for by the note could be a matter of indifference to him, yet the note ran for ten years, the rate of interest provided was below the current rate, the interest was payable at the maturity of the note, not annually or semiannually, as is the more common custom, and there was, of course, no provision by which the time

of payment could be accelerated. The age of Mrs. Spurgin at the time of the execution of the note is not shown definitely. Williamson testified that she "claimed to be forty odd," but to the direct question whether she was not in 1916 about the age of sixty years, he answered that he did not know. Seemingly, we think, there is at least a reasonable inference that Mrs. Spurgin did not expect to be called upon to meet the note during her lifetime. The trial court did not find that the more common fiduciary relation existed between the parties, but held that such a relation existed in fact. While the appellant seems to question the legal principle involved, it is sustained by authority generally, and we have ourselves adopted the principle. In *Meyer v. Campion,* 120 Wash. 457, 207 Pac. 670 (quoting from Pomeroy), we said:

" 'Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists *as a fact,* in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal.' "

That the note was founded in part on a valuable consideration, the administrator does not dispute. These the trial court in its findings recited with some detail, and with the values it fixed upon them, we are, in the main, content. But there was one service which Williamson rendered Mrs. Spurgin for which we think an adequate value was not allowed. Mrs. Spurgin purchased a rooming house, giving her obligations to the vendor in the sum of $5,000. She discovered later that she had been grossly defrauded in the transaction and

sought Williamson's aid in obtaining a rescission of the contract of purchase. Williamson took up the matter for her, and succeeded in obtaining a rescission of the sale, in which all of the obligations given by Mrs. Spurgin were returned to her. This service was, in our opinion, reasonably worth $500 more than the rather moderate value the trial court placed upon it, and the judgment against the administrator should be increased to this extent.

The judgment is reversed and remanded with instructions to modify it in the particular above mentioned.

HOLCOMB, MAIN, BEALS, and TOLMAN, JJ., concur.

