No. 36,035

CLAUDE F. KELLEY, EMMA J. TRIPP, and C. W. KELLEY, *Appellants*, v. DANIEL KELLEY, GEORGE WILLIAM KELLEY, ALICE T. KELLEY, His Wife, CHARLES WESLEY KELLEY and MERTTIE EDITH KELLEY, His Wife, *Appellees*.

(150 P. 2d 347)

Opinion filed July 8, 1944.

*Ralph H. Noah* and *R. L. Hamilton,* both of Beloit, argued the cause for the appellants.

*Charles L. Hunt,* of Concordia, argued the cause, and *Frank C..Baldwin,* of Concordia, *A. E. Jordan* and *Wm. N. Tice,* both of Beloit, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by three prospective heirs at law against their father and two other prospective heirs and their wives to have certain deeds executed in 1930 to five of the six prospective heirs declared valid and to have certain deeds executed by the father in 1941 to three of the same prospective heirs declared

invalid, or in the alternative for a decree that the parties take as heirs under the law of intestate succession. Defendants relied on the 1941 deeds and prevailed. Plaintiffs appeal.

The grantors in the 1930 deeds were Daniel Kelley and Ida May Kelley, the parents of the principal parties to the action. Ida May Kelley died intestate in March, 1933. No administration was had on her estate. The instant action was filed May 20, 1941. The testimony of the father, Daniel Kelley, was taken in this case by appellants in September, 1941, before the same district court that tried the instant case in order that his testimony might be preserved. He died intestate July 14, 1942, at the age of eighty-eight years. The original plaintiffs were Claude F. Kelley, Emma J. (Kelley) Tripp, and C. W. Kelley, also referred to as Clarence Kelley. No deed was made to the latter in 1930 or 1941. The reason for not executing a deed to him will appear later. The plaintiff Claude F. Kelley withdrew from the case as a plaintiff while the action was pending for reasons to be stated later. Opal Stull, a granddaughter, entered the case as a plaintiff later when attention was called by defendants to the fact there was a defect of parties. The defendants were the father, Daniel Kelley, and two sons, George William Kelley and Charles W. Kelley, and their wives. We shall hereafter refer to the defendant, George William Kelley, as George.

The general contentions of appellants as reflected by their second amended petition, in substance, were:

Separate deeds were executed in 1930 by Daniel Kelley and Ida May Kelley, his wife, to five children of the grantors, that is, to all of the children except C. W. Kelley; the 1930 deeds had been placed in the possession of A. G. Mead, an attorney, by the grantors with instructions to record them upon the death of the survivor of the grantors; A. G. Mead died April 21, 1933; C. R. Hubbard, an officer in The Guaranty State Bank of Beloit, was appointed administrator of Mead's estate and took charge of the deeds and placed them in that bank for safekeeping and to carry out the duties of Mead according to the instructions given to Mead; the defendant George and other defendants at his request waited until Daniel Kelley was eighty-eight years of age and until his wife had died and Daniel Kelley was incompetent to understand the nature and character of transactions involving the distribution of his property before they obtained the 1941 deeds; after Daniel Kelley had become so incapacitated defendants unlawfully and fraudulently obtained the

1930 deeds from the bank and destroyed them on or about April 10, 1941; on the latter date and sometime prior thereto George had voluntarily assumed management and control over the business affairs of his father; the father was under his dominion and control and a confidential relation existed between them; without independent advice the father was induced by George and his attorney, William N. Tice, to execute and deliver the 1941 deeds without understanding the effect thereof; the 1941 deeds were without consideration and were fraudulently obtained; under the agreement had by the father and mother and the heirs prior to the execution of the 1930 deeds each child receiving a deed to 160 acres of land was required to pay to Emma J. Kelley Tripp $1,000 which entitled her to the sum of $4,000 in addition to the city property conveyed to her by the 1930 deed.

Appellees' contentions, as reflected by their answer, in substance, were:

The 1930 deeds were executed but were placed in the hands of Mead, an attorney, merely for safekeeping and were subject to recall by the grantors at any time; there was no such agreement between the father and mother with respect to the 1930 deeds as pleaded by appellants but if there was it was in violation of the statute of frauds; there was no valid delivery of the 1930 deeds; William N. Tice was not attorney for George or for any other defendant prior to the commencement of the instant suit; (this denial was made under oath) the father was not mentally incompetent to understand the nature and effect of the 1941 deeds; no undue influence was exercised over him with respect thereto; when the father made certain changes in the property conveyed by means of the 1941 deeds and as a part of that same transaction and on the same date he entered into a written contract with George whereby the latter became bound by the obligations it imposed upon him to other heirs (these things are set forth in the findings of fact to be noted later and need not be narrated here); the plaintiffs, Claude F. Kelley and Emma J. Tripp had accepted payments under the 1941 contract and George had canceled a note of Emma J. Tripp pursuant to the 1941 contract and they were estopped to deny the validity of that contract; George was ready, able and willing to perform all the remaining obligations to other heirs required of him under that contract.

After the 1941 contract between the father and George was attached to defendants' supplemental answer and it disclosed the

plaintiff, Claude F. Kelley, was actually to receive such portion of his father's estate thereunder as he considered proper and right Claude F. Kelley formally withdrew from the case as a plaintiff.

The remaining original plaintiffs filed a reply in which they denied the existence of the 1941 contract and alleged that if it was made it was void by reason of the father's mental incapacity. They also alleged William N. Tice was attorney and agent for George at all times involving the 1941 transaction and further alleged other factual matters designed to avoid the effect of the 1941 contract, the terms of which averments need not be noted now.

Opal Stull, the granddaughter and only child of Averta M. Kelley Birt, deceased, with leave of court, filed a petition in which she adopted and ratified the second amended petition of the plaintiffs and described the quarter section of land which the 1930 deed conveyed to her mother. She further, in substance, alleged:

When she learned George was recording the 1941 deeds she recorded the deed to her mother on February 8, 1941 (she did not state how she obtained that deed); promptly after recording that deed an action purported to have been brought by her grandfather was filed against her, her husband, Charles W. Stull, and her father, Harry Birt, to set aside the recorded deed; the action was not in fact filed by her grandfather; her stipulation of settlement filed in that action was void for the reason that when she made the settlement she did not know the action in fact had not been brought by her grandfather; she was tendering back the land she received in such settlement.

To the petition of Opal Stull defendants filed an answer and cross petition in which they, in substance, alleged:

The deed to Opal's mother was never delivered to Opal but Opal in some manner, without the consent of her grandfather, obtained possession thereof; the grandfather, the grandmother having died in 1933, filed an action to set aside the recorded deed to remove the cloud from the title and to quiet title thereto in himself; Opal Stull was represented by counsel in that action and made the settlement with the advice of counsel (the contract of settlement was attached to defendants' pleading); Opal Stull had at all times demanded, received and retained the rents and profits from the land and had at no time offered or tendered the rents or profits therefrom to anyone.

In Opal Stull's reply she, in substance, alleged:

Her grandfather handed her the 1930 deed which had been made

to her mother; her grandfather was not the real plaintiff in the action against her, but George had fraudulently caused the action to be brought in order to obtain possession of the land; she made the settlement to avoid difficulty with her grandfather who was mentally incompetent to transact business; the settlement was fraudulently obtained and was void.

The reply of Opal Stull also denied other factual matters alleged in defendants' answer and cross petition touching financial relations of the parties. These subjects are covered in the findings of fact and need not be detailed here.

From this rather general summary of the voluminous pleadings it is clear two primary issues were presented. They were, first, whether there was a valid delivery of the 1930 deeds, and second, whether the 1941 contract between George and his father and the 1941 deeds executed at the same time and as a part of the same transaction were valid. The action was tried by the court and it made the following findings of fact and conclusions of law:

"1. Daniel Kelley and his wife, Ida May Kelley, had six children, whose names were as follows: George W. Kelley, Charles W. Kelley, Clarence W. Kelley, Claude F. Kelley, Emma J. Tripp, [and] Averta Birt. These children were all living on September 6, 1930.

"2. On September 6, 1930, Daniel Kelley, then being the record owner of all of the real estate involved in this action, except the town property which is described in (a) of this finding, which was then in the name of Ida May Kelley, but had been deeded by her in 1926 to Daniel Kelley, which deed was recorded February 18, 1941, went with his wife to the office of A. G. Mead, an attorney and notary public at Beloit, and employed him to prepare for them the deeds hereinafter listed, which deeds describe all of the real estate owned by the said Daniel Kelley and Ida May Kelley. On that date the deeds were executed by Daniel Kelley and his wife and acknowledged by them before Mr. Mead as a notary public. These deeds were as follows:

(a) To Emma Jane Kelley Tripp . . .*
(b) To George William Kelley . . .*
(c) To Charles Wesley Kelley . . .*
(d) To Claude F. Kelley . . .*
(e) To Averta Birt . . .*

[* After the name of each grantee appears a description of property covered by deed to such grantee.]

"Hereafter in these findings these deeds will be referred to as the 1930 deeds.

"3. No deed was made to the son, Clarence W. Kelley, for the reason that he had acquired and owned the southwest quarter (SW ¼) of section twenty-four (24), township six (6), range eight (8), Mitchell County, Kansas, through the assistance of his father, Daniel Kelley.

"4. Ida May Kelley died on the 3rd day of March, 1933. Averta Birt died intestate in May, 1938, and her estate was not administered upon. She left

as her sole heirs, her husband, Harry Birt, and her daughter, Opal Stull. Daniel Kelley died intestate June 14, 1942, and his estate is being administered upon in the Probate Court of Mitchell county, Kansas.

"5. When the 1930 deeds had been prepared and acknowledged, they were left with Mr. Mead without any instructions to deliver them to any person. The grantors retained control over them and claimed the right to withdraw them for the reason they were not entirely satisfied with the disposition of their property by such deeds, this was especially true of the deed to Claude F. Kelley, and the grantor, Daniel Kelley, believed that at any time he had a right to recall the deeds from the custody of Mr. Mead. None of these deeds was ever received by any of the grantees named therein, and none of them was ever recorded, except the deed to Averta Birt, and this was recorded after her death by her daughter, Opal Stull, under the circumstances hereinafter found.

"6. For safekeeping Mr. Mead placed all of these 1930 deeds in his safety deposit box in the Guaranty State Bank at Beloit, where they were found after his death, which occurred April 21, 1933. Each was in a separate envelope, on which was written by A. G. Mead only the name of the grantee in the deed. There was no written notations by Mr. Mead or anyone else on or in the envelopes indicating the ultimate disposition of any of the deeds.

"7. On or about May 6, 1937, Daniel Kelley with his daughter, Averta Birt, and his son, George W. Kelley, called at the bank at which time Daniel Kelley asked for the Claude F. Kelley deed stating he desired to make some changes in it. At the request of the bank, Daniel Kelley, Averta Birt and George W. Kelley executed a written receipt or certificate and in which they agreed to indemnify the bank against any loss or damage on account of the delivery of the Claude F. Kelley deed to said Daniel Kelley. This instrument is introduced in evidence as plaintiffs' Exhibit 4.

"8. On June 21, 1939, Daniel Kelley again appeared at the bank with his son, George W. Kelley, and his attorney, Wm. N. Tice, and requested the delivery to him of the remaining 1930 deeds and the envelopes in which they were enclosed. They were delivered at that time to Daniel Kelley, who signed a receipt therefor, witnessed by George William Kelley, such receipt being introduced in evidence as plaintiffs' Exhibit 12. The receipt, however, included the deed to Claude F. Kelley, which already had been delivered to Daniel Kelley as hereinbefore found.

"9. The 1930 deeds all contain a provision reserving to the grantors for life use of all income of the property described in each deed.

"10. Some time prior to February 18, 1941, Opal Stull obtained possession of the 1930 deed to her mother, Averta Birt, who was then dead. The manner of her obtaining possession is not definitely disclosed by the evidence, but it was without the knowledge and consent of Daniel Kelley, and when he learned that it was missing, and learned from his daughter, Emma Tripp, that Opal Stull had possession of it, he became quite angry and instructed his attorney, Wm. N. Tice, to use any means necessary to recover it.

"11. In response to this request, Wm. N. Tice and George W. Kelley went to Opal Stull and demanded the deed. She refused to return it and refused to state how she obtained it. Opal Stull caused this deed to be recorded without the consent of Daniel Kelley on February 18, 1941, at 3:00 p.m. Acting under

instructions of Daniel Kelley to recover this deed, Wm. N. Tice intended to bring suit immediately in the District Court of Mitchell County, Kansas, to rescind the deed, but because of his absence from town he requested Leon W. Lundblade, a practicing attorney in Beloit, Kansas, to bring the suit for him, and the suit was brought on February 19, 1941. The suit was against Opal Stull and her husband and Harry Birt, the surviving husband of Averta Birt.

"12. On or shortly before February 27, 1941, Opal Stull went to the home of Daniel Kelley in an effort to negotiate a settlement of the controversy over this deed. They did arrive at a settlement. To make the settlement effective, Opal Stull and Mr. Tice went to the office of A. E. Jordan, who then represented Opal Stull, and a written stipulation was entered into in the case of Daniel Kelley vs. Opal Stull, et al., which was signed by counsel for respective parties and also signed by Opal Stull personally on February 27, 1941. This stipulation was filed March 18, 1941, in said case and pursuant thereto and on the same date the court approved the stipulation and dismissed the case. This stipulation was introduced in evidence as defendants' Exhibit 3.

"13. Pursuant to this settlement, Opal Stull and her husband and her father, Harry Birt and his then wife, Etta Birt, made, executed and delivered their quitclaim deed to Daniel Kelley covering the north one-half (N ½) of the southwest quarter (SW ¼) and the southwest quarter (SW ¼) of the southwest quarter (SW ¼) section thirteen (13), township six (6), range eight (8), Mitchell County, Kansas, said deed being recorded on April 18, 1941, and Daniel Kelley made, executed and delivered to Opal Stull his quitclaim deed conveying to her the southeast quarter (SE ¼) of the southwest quarter (SW ¼) of said section thirteen (13) which deed was recorded by her.

"14. Ever since this exchange of deeds, Opal Stull has retained possession of the forty acres so conveyed to her, has received and retained the rents, issues and profits thereof, and had never offered to return such income, rents, issues and profits to any person, and never offered to reconvey the property to any person until after she impleaded in this action. She has never executed or delivered any deed to anyone covering this forty acres and is still the owner thereof.

"15. For a long time prior to April 10, 1941, Wm. N. Tice acted as legal counsel for Daniel Kelley, and they had many consultations with reference to the execution of new deeds by Daniel Kelley.

"16. Some time in March, 1941, Wm. N. Tice at the request of Daniel Kelley, prepared the deeds hereinafter referred to as the 1941 deeds and left them at the home of Daniel Kelley. The execution of these deeds was the subject of consultation and advice until and including April 10, 1941.

"17. On April 10, 1941, Mr. Tice at the request of Daniel Kelley took L. E. Foote, a notary public, with him to the home of Daniel Kelley and on that date, Daniel Kelley executed the following deeds referred to in these findings as the 1941 deeds:

      (a) To Emma Jane Kelley Tripp . . .*
      (b) To George William Kelley . . .*
      (c) To George William Kelley . . .*
      (d) To George William Kelley . . .*
      (e) To Charles Wesley Kelley . . .*

[* After the name of each grantee appears a description of property covered by deed to such grantee.]

"18. Before these deeds were signed by Daniel Kelley and acknowledged by him before the Notary Public, they were all read over to him fully by his attorney, Wm. N. Tice.

"19. These 1941 deeds, with the exception of the one to Emma Tripp, were on the day of their execution delivered by Daniel Kelley to George W. Kelley in the presence of Wm. N. Tice, who then took them and caused them to be recorded.

"20. The 1941 deed to Emma J. Tripp was delivered by Daniel Kelley to Wm. N. Tice to be delivered to Mrs. Tripp upon the condition that she sign the agreement, which was signed by Daniel Kelley agreeing in substance that Daniel Kelley have the income from the property during his lifetime, such provision not being included in the deed itself. This deed was never delivered to Emma J. Tripp because she refused to sign the agreement, but at the trial, Daniel Kelley then being deceased, the defendants offered the deed to her and her counsel.

"21. In connection with the preparation of the 1941 deeds, Mr. Tice prepared an agreement which was introduced in evidence as plaintiffs' Exhibit 1 between Daniel Kelley and George William Kelley. This agreement in substance required George William Kelley to cancel all indebtedness of Daniel Kelley due him whether outlawed or not, and further required him to make certain payments of money to Claude F. Kelley, to Emma Tripp, and to Charles Wesley Kelley. George William Kelley has fully made the payments of money required by him thereunder, so far as they are now due, and stands ready and willing to pay such balances as they fall due, but has not fully paid the money due Charles W. Kelley, but stands ready to do so. Under this agreement, Emma J. Tripp received from George William Kelley the sum of One Hundred Dollars ($100.00), has retained the same for her own use and benefit and has not made any offer to return the same to any person, until she filed her reply in this case.

"22. On October 2, 1942, the plaintiff, Claude F. Kelley, filed herein his written withdrawal as plaintiff in this action and did not personally appear at the trial. His attorneys of record at the trial requested the withdrawal of Claude F. Kelley's withdrawal from the case.

"23. Daniel Kelley had ample mental capacity to transact or manage his business and did transact or manage practically all of his business until the date of his death. He made deposits in the bank, signed checks withdrawing funds, collected rents from George W. Kelley, as tenant, looked after and managed his own household, ordered and paid for his groceries and other household supplies, paid his taxes and transacted or managed the transaction of such business as is usually transacted by a retired farmer, he borrowed at intervals money from the bank on his own note, paid such loans by his own checks, the last one being given on December 19, 1940. On some occasions checks were drawn on his account by George W. Kelley, beginning about 1914, and by Averta Birt in 1917. He did have confidence in his son, George W. Kelley, and frequently consulted with him on business affairs, but he was a man of strong will and exercised his free and independent judgment in such ultimate decisions.

"24. On April 10, 1941, and at all times prior thereto, Daniel Kelley was possessed of mental capacity to know, realize and appreciate the value, extent and nature of his property, the names of his children and his grandchild, Opal Stull, and knew and appreciated the claims of such children and grandchild upon his property and bounty. He was a man of strong will and not easily influenced by others. When he executed the deeds and contract with George W. Kelley on April 10, 1941, he was of sound mind. He had the mental capacity to understand and execute all of said documents; was not under duress or restraint, and did not act without independent advice, having for his counsel and attorney, Wm. M. [N.] Tice. He fully understood the effect of the deeds and contract and never made any effort to revoke or rescind any of said instruments.

"25. Wm. N. Tice never acted as attorney or agent for George William Kelley until the commencement of this suit, after which he represented as counsel herein, the defendant, George W. Kelley, and also the defendant, Daniel Kelley, until his death.

"26. Daniel Kelley could write his own name, but otherwise he was unable to read or write.

"27. George W. Kelley kept no books of account of his dealings with or for his father, but he kept checks, weights and other original memoranda.

"28. The purpose of Daniel Kelley in executing the 1941 deeds was to make complete disposal of his land and property belonging to him among his children.

"29. The deeds of Daniel Kelley dated April 10, 1941, in which George William Kelley was grantee conveyed the land described in the deeds to the grantee, George William Kelley, subject only to the obligations assumed by George William Kelley in a written contract executed at the same time that the deeds were executed, which obligations not liquidated by George William Kelley are found to be an equitable lien on the land he received under such deeds.

"CONCLUSIONS OF LAW.

"1. The 1930 deeds passed no title to the land described therein to the grantees named in said deeds.

"2. The plaintiff, Claude F. Kelley, cannot now deny the validity of the 1941 deeds.

"3. The plaintiff, Emma J. Tripp, cannot now deny the validity of the 1941 deeds.

"4. The defendant, Opal Stull, cannot now deny the validity of the 1941 deeds.

"5. All controversies between Daniel Kelley and Opal Stull were fully adjudicated in case number 7434, entitled Daniel Kelley vs. Opal Stull, Charles W. Stull and Harry Birt, in the District Court of Mitchell County, Kansas, by a stipulation dated February 27, 1941, signed by Wm. N. Tice and Leon W. Lundblade, attorneys of record for Daniel Kelley, and A. E. Jordan, attorney of record for Opal Stull, Charles W. Stull and Harry Birt, and also signed by Opal Stull, personally, filed in the District Court of Mitchell County, Kansas, on March 18, 1941, which was approved by the court and the case dismissed March 18, 1941, and no appeal has been taken.

"6. Emma J. Tripp is entitled to receive and retain the deed to her executed in 1941 and tendered to her in this case, which deed transfers to her the title to the land described in the deed.

"7. Clarence W. Kelley is not entitled to recover anything in this action.

"8. Emma J. Tripp is not entitled to recover anything in this action except the deed to the town property executed in 1941."

Appellants moved to have certain findings of fact modified and to have numerous other findings set aside on the ground they were contrary to and were not supported by competent evidence. They also requested numerous other findings of fact and conclusions of law. They moved to have each and all of the conclusions of law based on the findings which were made set aside for the alleged reason they were contrary to law, and finally moved for a new trial. These various motions were overruled.

The record discloses a sharp conflict in the testimony on every vital issue in the case and also on most of the incidental matters. Some of the findings made well may have resulted in part from a failure of the court to believe portions of the testimony of certain witnesses. The testimony admitted was ample to support every finding made. On review we, of course, are concerned only with testimony which supports or tends to support findings made and not with testimony which is contrary thereto. The conclusions of law are fully supported by the findings which were made.

Appellants complain of the admission of testimony concerning certain conversations with deceased persons and also concerning transactions between Daniel Kelley, deceased, and his attorney, William N. Tice, in 1941 when the 1941 contract and the 1941 deeds were executed. Appellants contend the latter transactions and communications between an attorney and his client are privileged communications and that the attorney was not a competent witness to testify concerning them. On the trial of this case appellants themselves adduced the testimony of Daniel Kelley, deceased, which they had taken during his lifetime in order to perpetuate it. Daniel Kelly had testified freely concerning his communications and transactions with his attorney, William N. Tice, relative to the 1941 contract and the 1941 deeds made pursuant thereto. Daniel Kelley, the principal, therefore waived his right to have those communications with his attorney protected as privileged and confidential. Furthermore appellants had elicited that testimony. The later testimony of his attorney during the trial touching those same mat-

ters was therefore not incompetent. The attorney's testimony was competent for other reasons but it is unnecessary to pursue them.

This action was tried by the court. There was no jury to be prejudiced. We have carefully examined this record and if any other testimony concerning conversations with any deceased person could be said to have been incompetent there was ample competent testimony when considered in connection with all the circumstances to support the findings the trial court made. Under these circumstances we would not be justified in reversing the judgment.

Appellants also urge testimony of various nonexpert witnesses was improperly admitted on the subject of Daniel Kelley's mental capacity to transact business in 1941. Appellants' own conduct with Daniel Kelley clearly tended to show that they believed him mentally competent to transact business. Moreover, these nonexpert witnesses were qualified to testify concerning their judgment of Daniel Kelley's mental capacity on the basis of what they personally had observed from their experiences with him. (*Fish v. Poorman*, 85 Kan. 237, 116 Pac. 898; *Mingle v. Hubbard*, 131 Kan. 844, 851, 293 Pac. 513; *Gorman v. Hickey*, 145 Kan. 54, 64 P. 2d 287.)

We find nothing in the record to justify a reversal. The judgment is affirmed.

PARKER, J., not participating.