No. 19,299.

M. Erma Shirley *v.* Jessye T. Merritt, et al., and d/b/a "Hunt for Real Estate."
(364 P. [2d] 192)

Decided July 24, 1961.   Rehearing denied September 5, 1961.

Mr. GERALD A. KAY, for plaintiff in error.

Mr. JOHN W. METZGER, Mr. BENJAMIN R. LOYE, Mr. RICHARD W. BANGERT, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE parties appear here in the same order as they appeared in the trial court where the plaintiff instituted an action to recover compensatory and exemplary damages for fraud. The complaint demanded the sum of $11,000 actual damages and $15,000 exemplary damages. Trial to a jury resulted in a verdict for $1850 actual damages and $450 exemplary damages.

The action was predicated on false representations allegedly made by defendant Corbin, one of the partners doing business as "Hunt for Real Estate." Plaintiff, who had been a school teacher for 37 years, being desirous of going into business, purchased a laundromat through Corbin from Mr. and Mrs. James W. Smith in August 1956. The complaint alleged that Corbin knowingly, falsely and fraudulently represented to plaintiff that the subject laundromat had, for a period of three months immediately prior to the date of the sale to plaintiff, produced $1400 per month gross business and that in the fourth month during the same period it had produced $1200 per month. Plaintiff further alleged that she was

induced by the misrepresentations to purchase the laundromat for the sum of $17,500; that she operated it until April 1957, and that during the period of plaintiff's operation the gross income averaged $660 per month. She further alleged that she was losing money on the operation and that in April 1957 she sold the business for $7800 in an effort to mitigate her loss. The answer denied all these allegations.

In seeking reversal, plaintiff takes the position that the undisputed evidence in the case establishes her damages at $9,000. On that basis, she asks this Court to direct the trial court to enter judgment in this amount or in the alternative to remand for retrial on the issues of actual and exemplary damages, her contention being that the questions of liability and damage have now been separated and that the only remaining issue is that of damages.

The plaintiff's evidence was to the effect that the defendant Corbin, a partner in the Hunt for Real Estate firm, represented to her that the income of the laundromat was from $1200 to $1400 per month and that the expenses were $10 per day. Corbin, of course, denied that he had made any such representations, but this question has been now resolved against him, the jury having decided that the misrepresentations had been proved. It was further shown that in April 1957 plaintiff sold the laundromat through Corbin (surprisingly) to a Mr. Journeay for $7800. This was, however, a very quick and somewhat forced sale and Journeay was shown to have purchased other laundromats and he paid a purchaser's commission to Corbin. Plaintiff did not pay the usual seller's commission on this transaction.

Journeay testified on behalf of the plaintiff as an expert witness. His qualification as such stemmed in part from purchase of four laundromats and his sale of three as of the date of his testimony. He further testified that he had made some study of values, both here and elsewhere. Under hypothetical questioning, Journeay said

that a laundromat having an income of $1200 to $1400 per month and expenses of $10 per day would have a reasonable market value of $17,000 to $18,000 and that a business of the character of the one in suit, having a gross income of $600 per month, would be worth no more than $8,000. The only testimony tending to establish the income of the business on the date of purchase was derived from water consumption. It was shown that this bears a relationship to gross productivity of a laundromat and that during part of one quarter prior to the purchase by plaintiff the water consumption corresponded to the amount consumed by plaintiff during her period of operation. Plaintiff's theory as to value is set forth in her brief:

"Plaintiff's evidence as to value was two-fold: (1) the price that she paid for the business of $17,500.00 and the price for which she sold the same at $7800.00 (supra); (2) the testimony of Mr. Journeay as an expert in the field based upon hypothetical questions (supra). The defendants did not present evidence nor controvert the values testified to. * * * "

The instruction (No. 8) as to damages submitted by the court told the jury that compensatory damages " * * * are measured by the difference between the actual value at the time of purchase and what the value would have been if the representations had been true."

In seeking reversal, plaintiff argues that the evidence as to damages and values was undisputed and uncontroverted. She maintains that defendant failed to positively controvert her evidence in the area of damages and consequently the record stands undisputed in establishing her actual damage to be not less than $9,000. Her exemplary damages, she argues, should bear the relationship to actual damages fixed by the jury. She would have us direct judgment for $9,000 actual damage and approximately $2250 exemplary damage. In the alternative, plaintiff asks for a new trial limited to damages.

■ Where the amount of damage is undisputed and liquidated and the trial court awards judgment for a less sum than the liquidated amount, the appellate court has authority to increase the judgment to the higher figure. See 56 A.L.R. (2d) 283, Sec. 37; *Mystic Tailoring Co. v. Jacobstein,* 94 Colo. 306, 30 P. (2d) 263; *Fleming v. Gill,* 60 Colo. 294, 153 Pac. 88. Cf. *Weicker Transfer and Storage Company v. Denver, Colorado Springs, Pueblo Motorway, Inc.,* 128 Colo. 306, 261 P. (2d) 1015. The latter case holds that once the question of liability is established by the verdict of a jury and it is clear that the jury disregarded the court's instruction as to the measure of damages, returning an inadequate verdict, the cause is to be remanded for retrial of the question of damages only. Comparing these lines of authority, we conclude that the damages were not here undisputed and liquidated in accordance with plaintiff's first premise. It would not, therefore, be appropriate to arbitrarily order the entry of a judgment in a definite amount.

II.

■ It is to be noted that plaintiff relies strongly on the evidence showing the difference between the amount which she paid and the amount of the ultimate sale to Journeay. This is, however, only evidence of value under the proper measure of damage. The question of fraud having been foreclosed by the verdict, plaintiff would be entitled to the difference between the actual market value of the business as of the date of purchase, and the value it would have had if the representations had been true. See *Otis & Co. v. Grimes,* 97 Colo. 219, 48 P. (2d) 788. There the verdict was excessive and the cause was remanded for a new trial to determine only the amount of damages sustained by the plaintiff. In approving the "loss of bargain" rule of damage as applied in such cases, the Court said:

"We believe that the better reason and the weight of authority support the rule that the measure of damages

is the difference between the actual value of the property and what its value would have been had the representation been true.

"The evidence supports the finding of the jury that the plaintiff suffered damage.

"3. The trial court instructed the jury that the measure of damages is the difference between the actual value of the stock when the plaintiff bought it and the price the plaintiff paid for it, with interest at the rate of eight per cent per annum from date of payment. The first part of the instruction, though approved in the cases in 74, 92 and 94 Colorado, supra, is not in harmony with the views expressed in this opinion, but no objection was or is made thereto. The latter part of the instruction is challenged on the ground that interest is not allowable in such an action. We have so held in *Clark v. Giacomini*, 85 Colo. 530, 277 Pac. 306, and *Kenney v. Angell*, supra. But defendant is in no position to urge the objection, for before the instruction was given defendant made no objection thereto, as required by our rule No. 7. However, as the case must be retried on the question of damages — a matter about to be discussed — we call attention to these matters so that at the re-trial the correct instructions may be given."

Thus it is clear that the "loss of bargain" rule as set forth in Instruction No. 8 of the instant case correctly describes the measure of damage applicable to the situation disclosed by the evidence.

III.

Turning now to the question whether plaintiff's evidence adequately supports the criteria of the "loss of bargain" rule, we note first that there is ample testimony in the record in support of plaintiff's contention that the value as represented by defendant was $17,500. Coincidentally this was the price which plaintiff paid. Plaintiff's own testimony, plus that of the expert, was that a laundromat business having the qualities which Corbin represented this one to have would reasonably

sell for $17,000 to $18,000. The testimony bearing on value as of the date of purchase is less convincing. Plaintiff was unable to prove directly the income realized by her predecessors. The expert assumed that the gross income prior to plaintiff's purchase was no more than the gross income during the plaintiff's operation. He inferred that the Smiths' gross income was the same as the plaintiff's because of similar water consumption. Based on the assumption that the gross income prior to purchase was the same as after purchase, he said that the reasonable market value at the time of purchase was no more than $8,000, which defendant made little effort to controvert. The only evidence tending to show, even indirectly, that the actual value in August 1956 exceeded $8,000 was Corbin's testimony that the sale was a quick one. Plaintiff's uncontradicted evidence as to value at time of purchase must therefore be held legally sufficient to the extent that the jury, in determining this point, was not justified in wholly disregarding it.

IV.

The final question is whether the verdict was so low as to indicate a failure on the part of the jury to follow the court's instruction that plaintiff was entitled to the "loss of bargain." Value is, of course, a matter of opinion and not of fact and is not susceptible to exact mathematical computation. *Wassenich v. City & County of Denver,* 67 Colo. 456, 186 Pac. 533; *City & County of Denver v. Lyttle,* 106 Colo. 157, 103 P. (2d) 1. Moreover, the jury has at least a limited but not an uncontrolled discretion in concluding reasonable market value. *Leitensdorfer v. King,* 7 Colo. 436, 4 Pac. 37; *City & County of Denver v. Minshall,* 109 Colo. 31, 121 P. (2d) 667.

In the case at bar the jury would have had to conclude that the market value of the subject business at the time of purchase approximated $15,500 in order to arrive at its verdict under the evidence and the instruction submitted. From a fair reading of the entire

record, it is impossible to conclude that the evidence established any such value. The gap between the damages awarded and the evidence is so great as to indicate abuse of discretion on the part of the jury. It is for this reason we determine that the verdict must be set aside and the cause remanded for a new trial limited to damages, both actual and exemplary.

In view of a retrial, we call attention to the fact that no instruction was tendered nor given defining market value. We observe that market value is not synonymous with the amount of income, gross or net. While these criteria might well serve as guides to value, the final determinant is the reasonable market value, that is, the price which the property will bring on the open market, assuming a voluntary sale by a leisurely seller to a willing buyer. See McCormick on Damages, Sec. 44, p. 165. The jury should be fully instructed on this subject and the evidence should be pointed specifically to this standard. It is the duty of the court to instruct the jury fully even where counsel fails to tender suitable instructions. *Kendall v. Hargrave,* 142 Colo. 120, 349 P. (2d) 993.

No instruction on expert or opinion evidence was given or tendered and this omission should be remedied on retrial. The jury should be told that they are not bound by testimony of the experts; that just as far as testimony appeals to their judgment it should be adopted. Cf. *Baker Metropolitan Water and Sanitation District v. Baca,* 138 Colo. 239, 331 P. (2d) 511.

The judgment is reversed and remanded with directions to grant a new trial limited to the question of damages only.

MR. JUSTICE FRANTZ not participating.