Daryl K. HOGG and Donna Hogg,
d/b/a Hogg Hereford Farms,
Plaintiffs and Appellants,

v.

FIRST NATIONAL BANK OF ABER-
DEEN, a National Bank; Lyle D.
Paschke, Richard Larson; John Doe
and John Does, Defendants and Appel-
lees.

Nos. 14920, 14921.

Supreme Court of South Dakota.

Argued Feb. 11, 1986.

Decided May 14, 1986.

Philip M. Kneifl of Kneifl & Kneifl, Omaha, Neb., for plaintiffs and appellants; Scott C. Petersen of McFarland, Petersen & Nicholson, Sioux Falls, on brief.

James A. Wyly of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for defendants and appellees.

HENDERSON, Justice.

## ACTION

This is an appeal from a jury verdict in favor of the defendants and the defendants' counterclaim. Plaintiffs appeal this adverse verdict. Defendants appeal the denial of their post-verdict motions to increase the damage award of $375,000. This case concerns the propriety of certain bank transactions but the verdict is based upon a promissory note. We affirm in part and modify in part; namely, we modify the judgment below to increase the amount to $468,556.79.

## PARTIES

Plaintiffs-appellants are Daryl and Donna Hogg, d/b/a Hogg Hereford Farms. Plaintiffs will be referred to as the Hoggs or Daryl Hogg. Defendants-appellees are the First National Bank of Aberdeen (Bank), presently known as Norwest Bank, which is a national bank located in Redfield, South Dakota. Lyle Paschke (Paschke) is the vice-president and manager of the Bank. Richard Larson (Larson), at the time of the events in question, was an agricultural loan officer, assistant vice-president, and assistant manager with the Bank.

## FACTS

In 1982, the Hoggs had two checking accounts with the Bank. One was a general farm account on which the Hoggs wrote personal and business checks; the other was a Farmers Home Administration (FmHA) supervised account. This latter account was subject to a Deposit Agreement between the Hoggs, the FmHA, and the Bank. According to the terms of this Deposit Agreement, the Hoggs could only write checks on that account with the countersignature of the FmHA and the FmHA could order the Bank to pay over the balance therein to the FmHA.

In April 1982, the Hoggs executed a $335,000 promissory note. The Bank was the holder of this note which represented a general farm loan based on an 18½% variable interest rate. Principal and interest were due on October 1, 1982.

Hoggs were interested in obtaining further operating financing but the Bank told the Hoggs to seek such financing elsewhere. Hoggs then approached the FmHA in Faulkton, South Dakota, about further financing. In negotiating an FmHA loan, it was Daryl Hogg's concern that some of the money go to the Bank, the Hoggs' primary lender, so as to reduce the April 1982 note and open up future operating financing from the Bank. The FmHA, however, determined that the Hoggs' real estate could not bear any more real estate debt; further, that the proceeds of any FmHA loan would have to be used to pay taxes and defray Federal Land Bank and FmHA payments; further, that the remainder be applied to a prior FmHA loan which bore a higher interest rate. In effect, the Hoggs would be paying less interest because a prior FmHA loan with a 9% interest rate was being paid by an FmHA loan with a 5% interest rate. Critical facts are that the terms of the loan, the recipients of the funds, and that the Bank was not to receive any of the FmHA loan money, was made explicitly clear to Daryl Hogg on numerous occasions by FmHA officers and the Hoggs' attorney, Ray Gallagher.

On June 6, 1982, an FmHA loan of $400,000 to the Hoggs was closed. At the closing, the following checks were made out: Federal Land Bank payment—$41,275.84; FmHA payment on current loans—$34,352.50; Faulk County Treasurer—$16,-

565.11; Spink County Treasurer—$1,040.95; Attorney Gallagher—$1,100; FmHA loan payoff—$305,665.60. These checks were signed by Daryl Hogg and countersigned by the FmHA but Daryl Hogg wrote the account number of the Hoggs' general farm checking account on the checks. These checks, however, were supposed to be drawn from the Hoggs' FmHA supervised checking account, into which the loan was to be deposited, but no one noticed the account number written by Daryl Hogg. Daryl Hogg refused to sign the $305,665.60 FmHA check stating that he wanted to confer with the FmHA district director about it. The FmHA $400,000 loan check was then delivered to Attorney Gallagher who was to take it to Redfield and deposit it in the Bank the next day. On the back of this loan check was stamped "For Deposit Only in the Supervised Bank Account of Hogg Hereford Farms in the First National Bank, Redfield, Pursuant to Deposit Agreement Dated 8/10/81."

The next day, June 9, 1982, Daryl Hogg went to Attorney Gallagher's office and obtained the FmHA loan check. Daryl Hogg stated he wanted to deposit the check into another account. Attorney Gallagher then pointed out the restrictive endorsement quoted above. Daryl Hogg thereafter proceeded to the Bank. At the Bank, Daryl Hogg sought to deposit the FmHA loan check in the Hoggs' general farm checking account. Larson pointed out the restrictive endorsement, but Daryl Hogg stated that five checks had been drawn on the Hoggs' general farm account and that these checks had been countersigned by the FmHA. Daryl Hogg indicated the approximate amounts of these checks and further stated that he was negotiating with the FmHA for the balance of the money; further, that he wanted to temporarily put $300,000 on his April 1982 Bank note so as to save some interest. When Larson was convinced that all of the FmHA loan money could be accounted for, he allowed Daryl Hogg to deposit the FmHA loan check into the Hoggs' general farm account. Daryl Hogg then wrote a $300,000 check to the Bank from this general account, which was agreed to be credited on the April 1982 note but to be returned to Daryl Hogg after he negotiated concerning the balance with FmHA.

Several days later, the FmHA discovered that the loan check had not been deposited in the supervised account. FmHA then demanded that the Bank place the funds in the proper account. When the Bank learned that Daryl Hogg's statements were untrue, the Bank rescinded the deposit into the general farm account, rescinded the payment on the April 1982 Bank note, and placed the FmHA loan funds into the FmHA supervised account. The FmHA thereafter requested that the balance of the FmHA supervised account be returned to it, whereupon the FmHA applied these funds as originally contemplated in the June 1982 FmHA $400,000 loan to the Hoggs.

Hoggs brought suit for $6,000,000 claiming that the Bank's unauthorized actions of canceling the deposit into the Hoggs' general farm account and transferring that money into the FmHA supervised account constituted breach of contract, negligence, and conversion. The Bank answered and counterclaimed for the amount of principal and interest due under the April 1982 Bank note. At the time of trial, this amounted to $468,556.79. A jury trial resulted in findings for the Bank on the Hoggs' claims and findings for the Bank on the counterclaim. The jury assessed the Bank's recovery on the counterclaim to be $375,000. The Bank moved the trial court, on three separate grounds, to increase the jury award on the counterclaim to $468,556.79. The trial court denied these motions.

From the jury's verdict, the Hoggs appeal. From the trial court's denial of the Bank's post-verdict motions, the Bank appeals. Various, uncorresponding issues are projected in the briefs. We distill them into three issues.

## DECISION

### I.

DID THE TRIAL COURT ERR IN ISSU-
ING JURY INSTRUCTION NO. 28-A?
THIS ISSUE IS NOT PROPERLY
RAISED ON APPEAL.

■ SDCL 57A-4-207(1)(a) provides that
each customer who obtains payment or ac-
ceptance of an item, warrants to the payor
bank, who pays or accepts the item in good
faith, that he has good title to the item or
is authorized to obtain payment or accept-
ance on behalf of one who has good title.
Based on this statute, the Bank's apparent
trial theory was that Daryl Hogg breached
this presentment warranty when he in-
duced the Bank to accept the deposit into
the Hoggs' general farm account; thus, the
Bank could rescind the deposit and place it
in the FmHA supervised account. Jury
Instruction No. 28-A, given by the trial
court, reads:

> A customer of a bank who transfers a
> check and receives consideration for such
> check warrants to the bank that the cus-
> tomer has good title to the check and is
> authorized to obtain payment and the
> transfer is otherwise rightful.

> Thus Daryl Hogg, in placing the
> [FmHA] check in his personal account,
> warranted to the bank such transfer was
> rightful. For breach of such warranty,
> the transaction could be rescinded.

> Further, in paying the $300,000 in
> funds to the bank, Daryl Hogg warrant-
> ed to the bank he had the right to do so.
> If he did not, Daryl Hogg breached such
> warranty. For breach of such warranty,
> the bank had the right to rescind the
> transaction.

On appeal, Hoggs contend that this in-
struction is a misstatement of the law be-
cause it fails to refer to the "good faith"
acceptance element of SDCL 57A-4-207(1).
Hoggs' theory is that the Bank accepted
the $400,000 FmHA loan check for deposit
in the Hoggs' general farm account with
knowledge and notice of the restrictive en-
dorsement; thus, the Bank did not accept
the deposit in good faith and therefore the
Bank is not entitled to rely on the present-
ment warranties of SDCL 57A-4-207(1)(a)
or to rescind its acceptance for breach of
those presentment warranties.

The Uniform Commercial Code defines
"good faith" as "honesty in fact in the
conduct or transaction concerned." SDCL
57A-1-201(19). Based on this definition,
the Bank contends its knowledge of the
restrictive endorsement is irrelevant.
Bank reasons the instruction did not have
to refer to "good faith" acceptance because
there was no evidence that the Bank acted
otherwise than honestly in fact in the con-
duct or transaction concerned.

Whatever the validity of the respective
parties' contentions, we hold that we can-
not consider the Hoggs' erroneous instruc-
tion contention. SDCL 15-6-51(b) pro-
vides, inter alia:

> On such settlement each counsel, or par-
> ty, shall specify and state the particular
> ground or grounds upon which the giving
> or rejecting of any instruction is objected
> to. It shall be insufficient to state gen-
> erally that an instruction does or does
> not state the law, but it shall be neces-
> sary to specify clearly wherein any in-
> struction, or part thereof objected to, is
> insufficient or does not state the law.

> ... No grounds of objection to the
> giving or the refusing of an instruction
> shall be considered either on motion for
> new trial or appeal, unless presented to
> the court upon the "settlement" of such
> instruction.

We have held that this statute

> clearly makes it the burden of the object-
> ing party to fairly inform the trial judge
> of the grounds which he feels justify his
> position.... A trial judge is entitled to
> be advised of the grounds on which he is
> asked to rule. Unless this is done it
> cannot be said that the trial court passed
> on the ground of which review is being
> sought. If undisclosed grounds, includ-

ing afterthoughts, can be reviewed on appeal, the virtue of preparation for trial would be compromised.

*Lang v. Burns,* 77 S.D. 626, 632, 97 N.W.2d 863, 866 (1959).

In the present case, during the settlement of instructions, Hoggs objected to Instruction No. 28–A on the ground that it was not supported by the evidence. Hoggs, however, did not object to the instruction because it was a misstatement of the law or because it failed to recite a "good faith" acceptance requirement on the part of the Bank. Although no particular formality is required when objecting to instructions, it must be clear that the trial court was advised of possible errors so it has the opportunity to correct the instructions. *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114, 116 (S.D.1977). "[T]he failure of a court to correctly or fully instruct the jury is not reviewable unless an objection or exception to the instruction identifying the defect therein with sufficient particularity was taken or a written instruction correctly stating the law was requested." *Id.* Hoggs failed to object to the instruction on the basis now asserted on appeal, and we cannot interpret their trial objection as encompassing their appellate assertion. Therefore, we cannot substantively rule upon it. SDCL 15–6–51(b).

## II.

DID THE TRIAL COURT ERR IN PERMITTING THE TESTIMONY OF ATTORNEYS GALLAGHER AND BATTEY? WE HOLD IT DID NOT.

■ Attorney Ray Gallagher represented the Hoggs while negotiating the loan from the FmHA. Attorney Gallagher was present at the FmHA loan closing on June 8, 1982, and advised Daryl Hogg concerning those events. Attorney Gallagher also advised Daryl Hogg on June 9, 1982, concerning the depositing of the FmHA loan check and further negotiations with the FmHA. At the time of these events, Attor-

neys Gallagher and Richard Battey were partners in the practice of law.

During discovery, Daryl Hogg's deposition was taken. During this deposition, Daryl Hogg testified as to the content of all conversations he had with Attorney Gallagher which concerned the events of this litigation. Attorney Gallagher's deposition was then taken. Prior thereto, Daryl Hogg expressly waived the attorney-client privilege on the record. Attorney Battey's deposition was then taken. It revealed that in June 1982, after the Bank had transferred the FmHA loan proceeds out of the Hoggs' general farm account and into the FmHA supervised account, and after the FmHA requested the Bank to forward the balance of this latter account to the FmHA as permitted in the Deposit Agreement, the Bank asked Attorney Battey if it must comply with the FmHA's request. Attorney Battey advised the Bank that it did. The record reveals that Attorney Battey had previously advised and/or represented the Bank in other matters but the Bank did not retain Attorney Battey. The record also reveals that Attorney Battey was in the Bank on other business when this advice was given and the Bank was not billed therefor.

Prior to trial, Hoggs moved the trial court to prevent Attorneys Gallagher and Battey from testifying. In support of this motion, the Hoggs offered the attorneys' depositions so as to establish their legal partnership. The trial court denied the motion and both attorneys testified at trial.

On appeal, Hoggs contend that the trial court erred and they should have been permitted to withdraw the waiver of the attorney-client privilege because the waiver was not voluntary and the parties had not altered their legal positions at trial due to the prior waiver.

Certain confidential attorney-client communications are privileged and need not be disclosed. *See* SDCL 19–13–3; SDCL 19–13–4; and SDCL 19–13–5. This privilege, however, can be waived if the "holder of

the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter." SDCL 19–13–26. *See also, State v. Catch The Bear*, 352 N.W.2d 640, 647 (S.D.1984). Hoggs' contention that the waiver was not voluntary is based on their lack of knowledge that Attorney Gallagher's law partner was advising the Bank. Hoggs, however, do not contend they were unaware of a waiver's implication or that the waiver was based on fraudulent acts. Additionally, they overlook the critical fact that Attorney Battey did not represent the Bank and did not advise the Bank concerning the events transpiring between the Bank and Hoggs, either when the events occurred or when the attorney-client privilege was waived. The advice given to the Bank concerned a transaction between the Bank and the FmHA and did not directly involve the Hoggs. We find nothing to impugn the voluntariness of the waiver.

▆ As for the Hoggs' contention that the trial court erred in not permitting the withdrawal of the privilege waiver, we reject this contention. Daryl Hogg testified in his deposition as to the content of all conversations with Attorney Gallagher. Daryl Hogg also expressly waived the privilege prior to the deposition of Attorney Gallagher. Thus, there existed both implied and expressed waivers of the privilege. Testimony elicited before trial, as well as other pretrial tactics or events, can result in a waiver of a privilege. *See Boger v. Krinn*, 141 Ind.App. 418, 228 N.E.2d 426 (1967); *Blish v. Greer*, 74 Ind.App. 469, 120 N.E. 606 (1918); *Kelley v. Kelley*, 158 Kan. 719, 150 P.2d 347 (1944); *SICPA North America v. Donaldson Enterprises*, 179 N.J.Super. 56, 430 A.2d 262 (1981); *Phipps v. Sasser*, 74 Wash.2d 439, 445 P.2d 624 (1968); and Annot., 51 A.L.R.2d 521, § 10 (1957). And indeed, authority exists for the proposition that once a privilege is waived, it cannot be regained. *United States v. Krasnov*, 143 F.Supp. 184 (E.D. Pa.1956), *aff'd*, 355 U.S. 5, 78 S.Ct. 34, 2

L.Ed.2d 21 (1957); *Blish*. Here, when the attorney's testimony was found to be adverse, the Hoggs sought to exclude it by retracting their waiver. But once the privileged material was disclosed, the reason for deeming it privileged then ceased. The waiver and the testimony resulting therefrom is in the record and the Hoggs offer no substantial reason for denying it.

### III.

DID THE TRIAL COURT ERR IN NOT GRANTING THE BANK'S POST-VERDICT MOTIONS TO RAISE THE AWARD OF DAMAGES ON THE COUNTERCLAIM? WE HOLD THAT IT DID AND MODIFY THE COUNTERCLAIM AWARD APPROPRIATELY.

Based on the April 1982 Bank loan, which the Hoggs had not repaid, the Bank counterclaimed for $325,652.84 plus accrued interest, which, at the end of trial, amounted to $142,903.95 for a total of $468,556.79. The jury was instructed as to these exact amounts. During deliberations, the jury sent a note to the trial court regarding this instruction. The jurors' note read as follows: "Accrued interest— Due the Bank $142,903.95—We Assume to be calculated fairly. (Legal interest rate?) 18½% for entire time?" With counsel and the parties present, the trial court responded to the jury's inquiry with this answer: "The interest rate was calculated pursuant to the terms of the promissory note and was adjusted as interest rates changed. The interest rates were legal." Notwithstanding, the jury found for the Bank on "all the issues under the counterclaim," thereby assessing the Bank's recovery at $375,000. On the Hoggs' claim, the jury also found for the Bank and determined that Hoggs should recover nothing thereon. Bank thereafter motioned the trial court to amend the judgment by adding pre-verdict and prejudgment interest in the sum of $93,556.79 for a total verdict of $468,556.79. Bank also motioned for a judgment notwithstanding the verdict for

the trial court to increase the verdict to $468,556.79; and the Bank further motioned the trial court to regard the counterclaim verdict as advisory only and to enter judgment in the amount sought by the Bank. The trial court, however, denied these motions.

■ On appeal, the Bank requests this Court to modify the counterclaim award of damages because there is no dispute as to the amount of money owed to it, there is no dispute as to the rate of interest being charged or the legality of that interest, and determining the correct amount is a matter of simple mathematical calculation.

SDCL 15–30–2 provides in part:

Upon an appeal from a judgment or order, the Supreme Court may reverse, affirm, or modify the judgment or order, and may direct the entry of such judgment or order as the court deems required by the record, as to any or all of the parties....

SDCL 15–26A–12 further provides:

By its judgment, the Supreme Court may reverse, affirm, or modify the judgment or order appealed from, and may either direct a new trial or the entry by the trial court of such judgment as the Supreme Court deems is required under the record.

Thus, under the above-quoted statutes, this Court can modify the jury's counterclaim award or direct the trial court to enter judgment in the amount sought by the Bank, if we deem such to be required by the record herein. *Cf., State v. Hammerquist,* 67 S.D. 417, 422, 293 N.W. 539, 541 (1940); and *Walters v. Gilham,* 52 S.D. 82, 84–86, 216 N.W. 854, 855–56 (1927).

Other jurisdictions, cases, and authorities have concluded that appellate courts may modify a verdict by increasing the award of recovery. *See* 5 Am.Jur.2d *Appeal and Error* § 946 (1962); 5B C.J.S. *Appeal and Error* § 1883(3) (1958); and Annot., 56 A.L. R.2d 213, § 18 (1957). Numerous cases exist where the appellate court raised the recovery awarded by modifying the judgment and affirming as modified, or reversing the judgment and remanding with directions to increase the award. *See, e.g., Pritchett v. Road Improvement Dist. No. 4,* 167 Ark. 555, 268 S.W. 1119 (1925); *Shirley v. Merritt,* 147 Colo. 301, 364 P.2d 192 (1961); *Mystic Tailoring Co. v. Jacobstein,* 94 Colo. 306, 30 P.2d 263 (1934); *Williamson v. Craig,* 204 Iowa 555, 215 N.W. 664 (1927); *Wallace v. Tri-State Ins. Co.,* 302 N.W.2d 337 (Minn.1980); *Bass v. Ring,* 210 Minn. 598, 299 N.W. 679 (1941); *McDowell Road Associates v. Barnes,* 198 Neb. 207, 252 N.W.2d 151 (1977); *Spence v. Damron,* 31 Neb. 846, 48 N.W. 880 (1891); *Dittmer v. Nokleberg,* 219 N.W.2d 201 (N.D.1974); *Gunderson v. Green,* 154 Wash. 201, 281 P. 731 (1929); and *Slane v. Curtis,* 41 Wyo. 402, 288 P. 12 (1930). Several cases have also specifically determined that an award could be increased at the appellate level when the action involved liability under a promissory note. *See Wheeler v. Cantwell,* 140 S.W.2d 744 (Mo.App.1940); *Levy v. Avery,* 45 Misc. 647, 91 N.Y.S. 67 (1904); *Cunningham v. Spencer,* 111 Okla. 217, 239 P. 444 (1925); *Rhodes v. Dallas Joint Stock Land Bank of Dallas,* 91 S.W.2d 962 (Tex.Civ.App.1936); *Broocks v. Masterson,* 37 Tex.Civ.App. 99, 82 S.W. 822 (1904); and *Farmers' Nat'l Bank v. Howard,* 71 W.Va. 57, 76 S.E. 122 (1912).

■ Here, the Bank's loss, both in principal and interest as of the date of trial, under the note which evidences the April 1982 loan to the Hoggs, was liquidated and capable of accurate determination by mathematical calculation. This is supported in the record and under these circumstances, we increase the Bank's recovery to $468,-556.79 by modifying the Judgment in this respect. There is no logical explanation to find for the Bank on all issues and then award only partial interest as was done by this jury. Further, we are not usurping the jury's function on fact-finding; once the jury found for the Bank on all of the issues, interest was simply a mathematical

computation. We are cognizant of our general rulings that trial courts cannot substitute their judgments and findings for that of the jury. *See Ebert v. Fort Pierre Moose Lodge # 1813*, 312 N.W.2d 119, 122 (S.D.1981); and *State Highway Comm'n v. Bloom*, 77 S.D. 452, 468, 93 N.W.2d 572, 581 (1958). However, procedures exist for correcting a verdict where interest is omitted, *Mueller v. Mueller*, 88 S.D. 446, 449–50, 221 N.W.2d 39, 41 (1974); and an exception to our general rulings exists, and a trial court may increase the jury's verdict where the trial court has instructed a verdict for a sum certain since no issue of fact is before the jury. *Krumm v. Feuerhelm*, 298 N.W.2d 184, 188 (S.D.1980). Here, the jury was instructed that if they found for the Bank, they were to fix the damage proved by the evidence, namely: $468,-556.79. Additionally, in *First Nat'l Bank of Waubay v. Herold*, 56 S.D. 547, 549, 229 N.W. 521, 522 (1930), we recognized that a case may exist where interest on a note could be added to the jury's verdict by the trial court; and we find the present situation to be just such a case. The trial court erred in denying the Bank's post-verdict motions.

Judgment appealed from is affirmed as modified by this Court.

MORGAN, J., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur.

FOSHEIM, C.J., and WUEST, J., concur in part and dissent in part.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

FOSHEIM, Chief Justice (concurring in part, dissenting in part).

While I agree with the basic conclusions reached by the majority, I disagree with the ultimate disposition. Our appellate procedure statutes permit this court to modify a judgment on appeal. *See* SDCL §§ 15–30–2 & 15–26A–12. However, the usual and better rule is to remand and direct the trial court to enter the necessary judgment or order.

I am hereby authorized to state that Justice WUEST joins in this concurrence in part and dissent in part.