No. 41,158

CARROLL C. CRANSTON, *Appellant,* v. HENRY STEWART and RELLES STEWART, *Appellees.*

(334 P. 2d 337)

Opinion filed January 24, 1959.

*C. H. Morris,* of Wichita, argued the cause, and *Edward E. Pedroja,* of Eureka, and *Robert F. Bailey,* of Wichita, were with him on the briefs for the appellant.

*George Forbes,* of Eureka, argued the cause, and *Thos. C. Forbes* and *Harold G. Forbes,* both of Eureka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action by Carroll C. Cranston (plaintiff-appellant), a real estate broker, for recovery of a commission for services performed under the terms of an oral contract in negotiating an exchange of real property owned by Henry Stewart and Relles Stewart (defendants-appellees). From a verdict in favor of defendants, plaintiff appeals.

Plaintiff's petition alleged that on September 2, 1956, defendants orally listed with him, a licensed real estate broker, certain of their properties for sale or trade and orally agreed to pay him a commission of five per cent on the gross value of the listed properties, and he orally accepted the listing and the agreement and orally agreed to spend his time and efforts on their behalf. On September 4, 1956, plaintiff contacted the Simons, who orally advised him they were interested in plaintiff negotiating an exchange of their properties, which they valued as a unit at $172,000, for that of defendants. The Simons, having been shown defendants' Sedgwick county property and having been furnished information on defendants' other two pieces of property, made an offer of exchange, and defendants, in turn, made the Simons a counter offer—all of which transactions were handled by and through plaintiff. Plaintiff further alleged defendants thereafter dealt directly with the Simons to avoid paying him the promised five per cent commission, and he was reliably informed the Simons and the Stewarts had entered into a written agreement for exchange of the mentioned properties. Plaintiff alleged further that he, by his efforts, procured the Simons, who were ready, willing and able to make such exchange of properties on the terms set out; and that the Simons entered into a written agreement with defendants for exchange of the properties upon the basis agreed upon, and by reason thereof defendants were indebted to him in the sum of $11,250.

Defendants alleged that during all the time material to the case, and many months prior thereto, their property was listed for sale or trade with Paul Sailor, real estate agent, and denied plaintiff was the procuring cause of any exchange of properties between the parties.

Plaintiff's reply alleged defendants informed him Sailor had the "property involved" listed but was getting nothing done, and they wanted a trade; that they asked him to show the property and promised, if he effected a trade, a guarantee of a full five per cent on the value of the listed property, and that they "would take care of Sailor if Sailor caused any trouble." Plaintiff denied he had ever been told by defendants that Sailor had contacted the Simons with regard to an exchange of the properties, and also denied that Sailor had ever shown the defendants' property to the Simons.

The evidence, insofar as is pertinent to the determinative issue, is as follows: On September 2, 1956, defendants Stewart listed with plaintiff Cranston, a real estate broker, certain real properties for sale or exchange and agreed to pay him a commission of five percent of the agreed value of the properties upon the consummation of a sale or exchange thereof. Pursuant to the oral agreement, plaintiff began negotiations between the Stewarts and the Simons, the latter being the owners of certain land in Greenwood county, and transmitted several offers and counter offers between the parties. While plaintiff was awaiting a response to the last of a series of offers, he discovered the Stewarts and the Simons had entered into a written contract for exchange of the properties. The testimony further shows the defendants, the Simons and one Paul Sailor, a real estate agent, got together some time early in October, negotiated a trade of the Stewarts' and the Simons' properties and worked out the details of a contract of exchange. The Stewarts and the Simons then jointly employed Harold Forbes, attorney at law, to draw the contract of exchange for them. The contract was drawn in Forbes' office in the presence of Paul Sailor, the Stewarts and the Simons, and was subsequently put in escrow in the bank to await the completion of a loan on certain of the properties. Subsequent to plaintiff's discovery that the exchange of the properties had been made, he contacted defendant Stewart, who advised him they had traded their properties for that of the Simons, but that plaintiff was "protected in the contract," and advised him to contact either Paul Sailor or Harold Forbes, who had drawn up the contract.

A *subpoena duces tecum* for the production of the written contract was served on Harold Forbes prior to trial. At the trial Forbes admitted having a copy of the written contract, but defendants' counsel objected to its production on the ground it was

a confidential communication protected by the attorney-client privilege. The court sustained the objection. Later, the defendant Henry Stewart was ordered by the court to bring in a copy of the contract. He testified he was unable to find a copy. Plaintiff's counsel then asked Stewart to get a copy of the contract from his attorney; whereupon, defendants' counsel objected on the ground of attorney-client privilege, which objection was sustained by the court.

No useful purpose would be gained by narrating all the evidence given at the trial or by considering the numerous specifications of error. Suffice it to say, plaintiff specifies as error the failure of the trial court to compel Harold Forbes or Henry Stewart to produce the written contract of exchange between the Stewarts and the Simons.

The determinative issue in this case is whether the trial court erred in sustaining the defendants' objection to plaintiff's request that attorney Harold Forbes and defendant Henry Stewart produce the written contract of exchange. Plaintiff contends this evidence was vital to his case and its absence denied him a fair trial.

G. S. 1949, 60-2805 makes an attorney incompetent to testify concerning any communication made to him by his client in that relation, or his advice thereon, without the client's consent.

In determining whether the claim of privilege was justified in this case, it must be decided at the outset if Mr. Forbes in drafting the contract was acting for defendants Stewart in his capacity as attorney and legal adviser concerning confidential communications. Communications between attorney and client during, and by reason of, their relation as such, made in confidence and for the purpose of enabling the attorney to perform his professional duty in regard to the matter communicated, or made by him in performing such duty, are privileged. A communication to be privileged must be of a private and confidential character. (*In re Elliott,* 73 Kan. 151, 84 Pac. 750.) However, it is not every communication or act that is privileged. Where an instrument is drafted by an attorney, it may necessarily affect rights and obligations, but there is not necessarily a contribution of legal advice in its preparation.

The record discloses Mr. Forbes was not acting as attorney or legal adviser of defendants Stewart. Where the attorney serves merely as a scrivener, communications concerning the drafting of the instrument or the instrument itself are not privileged and must be admitted. Thus, in *Sparks v. Sparks,* 51 Kan. 195, 201, 32 Pac. 892, the court declared:

"Of course communications between attorney and client are privileged when they are confidential, but there is testimony that Wray was not in any sense acting as the attorney or legal adviser of R. M. Sparks. He appears to have been employed only as a scrivener to draw a certain conveyance and notes, and was acting for all of the parties. He was not employed to give legal advice to R. M. Sparks, but only to put in legal form and phrase the agreements of the parties; and the fact that he happened to be skilled in the law will not make him incompetent as a witness, nor can the communications made by the parties to him be considered as privileged."

See also *Grimshaw v. Kent,* 67 Kan. 463, 73 Pac. 92; *Black v. Funk,* 93 Kan. 60, 143 Pac. 426; *Moran v. Thurman,* 127 Kan. 688, 275 Pac. 160; 8 Wigmore, Evidence, § 2297 [3rd Ed.].

The general rule is stated in 58 Am. Jur., Witnesses, § 481, p. 269:

"Communications to an attorney are not privileged . . . where the transaction between attorney and client involves a simple transfer of title to real estate, or where the attorney is a mere scrivener, and there is no consultation for legal advice. So where an attorney is employed merely to put in legal form and phrase certain documents or agreements of the parties, the fact that he is skilled in the law will not make him incompetent as a witness, nor can the communications made by the parties to him be considered as privileged."

Attorney Forbes testified that he was contacted by defendants Stewart and the Simons to draw, or write, the contract and he represented all of them; that the contract was drawn with all present, including Mr. Sailor, whom he did not represent. Mr. John Simon testified the Simons, Sailor and the Stewarts decided to have Harold Forbes draw the contract, and it was later placed in escrow. Defendant Henry Stewart testified he and his wife joined with the Simons in employing Forbes to draw the contract, which was placed in escrow. It is apparent from an abundance of testimony in the record that Mr. Forbes served merely in the capacity of a scrivener in drafting the contract between the parties. He was not employed by defendants to give legal advice, but was employed only to put in legal form and phrase the contract between the Stewarts and the Simons.

Moreover, it is clear to us that Henry Stewart, in his testimony, waived the right, if the right ever existed, to have the contract protected as privileged and confidential. It has often been stated that the attorney-client privilege is designed to secure the client's confidence in the secrecy of his communications and thus promote freedom of consultation of legal advisers by clients. (*State v. White,* 19 Kan. 445; 8 Wigmore, Evidence § 2291 [3rd Ed.].) While a client may not be compelled to disclose a confidential communica-

tion made to his attorney, the reason for the privilege disappears when the client voluntarily testifies to the contents of the communication, and the privilege is deemed waived. (*State v. White,* supra; *Kelley v. Kelley,* 158 Kan. 719, 150 P. 2d 347.)

In the instant case the record clearly discloses that Henry Stewart testified the contract involved three described pieces of property owned by him and his wife; this property was exchanged for the Simons' ranch; and the cash difference to be paid by him and his wife to the Simons was $70,000, which they borrowed to close the transaction. This voluntary testimony as to the contract's terms must be considered a waiver of the privilege relating to other matters in the contract. The client cannot be allowed to disclose as much as he pleases and at the same time assert privilege to withhold the remainder.

It is also the general rule that an attorney may be compelled to produce papers belonging to his client where the knowledge of their existence and contents is accessible to others or the public. Here, the contract was drafted in the presence of Mr. Sailor, not a party to it, and then placed in escrow in the bank, where it was accessible to others. (*Pearson v. Yoder et ux.,* 39 Okla. 105, 134 Pac. 421, 48 L. R. A. [N. S.] 334, and cases therein cited; 58 Am. Jur., Witnesses, § 492, p. 275.)

Another well-established rule is that an attorney may be compelled to produce in evidence any paper or record in his possession belonging to his client which the client himself could be compelled to produce. (*Pearson v. Yoder et ux.,* supra, and cases cited therein; 58 Am. Jur., Witnesses, §§ 499, 500 and 501, pp. 280 and 281.)

In view of what has been said, the trial court erred in failing to compel defendant Stewart to secure from his attorney a copy of the contract to be produced in court; and the court further erred in failing to require attorney Forbes to produce the contract for the court's inspection with regard to its materiality.

Defendants contend that even if it was error for the lower court to refuse to compel Forbes or Stewart to produce the contract, such error is not reversible. Defendants maintain plaintiff is suing for a commission under his oral agreement with them and there is therefore nothing in the contract between the Simons and the Stewarts which could benefit plaintiff.

We cannot accept this contention. After alleging his oral agreement with defendants, plaintiff alleged that he had procured the

Simons, who were ready, willing and able to enter into an exchange of property; and that they and the Stewarts had entered into a written agreement of exchange, on which basis he was entitled to a commission. Clearly, plaintiff was alleging that the terms of the ultimate agreement entered into by the parties indicated he was in fact the procuring cause of the exchange and therefore entitled to the commission. It is apparent the contract of exchange was a piece of evidence vital to plaintiff's case and the failure of the trial court to compel its production is reversible error.

It follows that the judgment of the trial court is reversed and the case is remanded with directions to set aside the judgment and grant a new trial.

It is so ordered.