## No. 41,718

H. A. HOUSER and E. REEDA HOUSER, husband and wife; HENRY A. BRUHN and BLANCHE A. BRUHN, husband and wife; L. L. FOSTER and PEARL FOSTER, husband and wife; WILLIAM EVITTS and EDITH V. EVITTS, husband and wife; CLARENCE W. SMITH and ISABELLE E. SMITH, husband and wife; GALE KIDD, a single man; LENA M. PETERSON, a single woman; HARRY E. BEESON and IDA BEESON, husband and wife, *Appellees,* v. BEN H. FRANK d/b/a FRANK OIL COMPANY, a Trust Estate, Tulsa, Oklahoma, and Frank Oil Company, a Trust Estate, Tulsa, Oklahoma, *Appellant.*

(350 P. 2d 801)

Opinion filed April 9, 1960.

*Oren Gray,* of Parsons, argued the cause, and was on the briefs for the appellants.

*Clement H. Hall,* of Coffeyville, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The appellees named in the caption brought a suit in the district court to cancel an oil, gas and mineral lease. Appellants were named as defendants. After a trial before the district court, the court entered judgment canceling the lease, and allowed plaintiffs the statutory sum of $100 and $300 for attorney fees, all as provided in G. S. 1949, 55-201 and 55-202.

The lease involved in this suit was called a "community" lease, but the special provisions of the lease need not be noted in the entirety. The pertinent parts of the lease and the questions involved as to the merits of this case are clearly set forth in the following findings of the trial court, which were made a part of the journal entry:

"The court finds that the plaintiffs are citizens of the State of Kansas and Kansas Farmers and that on the 22nd day April, 1955, as lessors, did lease to the Frank Oil Company, a Trust Estate, lessee, of which Ben H. Frank was the Sole Managing Trustee, certain Kansas property by a community oil, gas and mineral lease by the terms of which lease the Frank Oil Company, a trust estate, became obligated to pay delay rental of $1.00 per acre to each plaintiff for the land owned by the particular plaintiff on or before July 30, of each year, unless said defendant explored or reworked old wells in good faith, and with reasonabe diligence, as provided by the said lease.

"THE COURT FURTHER FINDS that the defendant has procured no commercial production whatever of any minerals; that the defendant has paid no delay rentals; that the defendant did not, in good faith and with reasonable diligence, pursue explorations, reworking of the old wells, or pay delay rentals and that in 48 months of lease operations no well has been completed.

"THE COURT FURTHER FINDS that the said lease which is recorded in Book R of Leases, at pages 529 through 532 in the office of the Register of Deeds of Labette County, Kansas is void and should be canceled."

We have carefully read all of the defendants' abstract and are certain that nothing will be gained by recounting the evidence therein. We find it only necessary to say that the district court's findings were amply supported by the evidence adduced at the trial.

Apart from the merits of the case, defendants urge that the district court erred in not granting them a continuance after the case had been set for trial on a day certain. The granting or denial of a motion for a continuance is so much within the sound discretion of the trial court that this appeal would ordinarily be governed only by that rule. (*Konitz v. Board of County Commissioners,* 180 Kan. 230, 303 P. 2d 180; and see *Desch v. Carnutt,* 186 Kan. 238, 349 P. 2d 941; and authorities cited.)

Because of the somewhat unusual nature of the motion for continuance in this appeal, we shall consider the motion and arguments made in its support briefly.

The record shows that the original petition in this litigation was filed on August 24, 1956; that the petition was attacked by motions and demurrers; that the original suit was dismissed without prejudice and refiled; the issues were not fully made up by the pleadings until August 11, 1958. The plaintiffs being anxious to bring the matter to trial, asked defendants' then counsel to agree upon a date for trial. Counsel wrote to defendant Frank concerning this matter under date of March 5, 1959. Defendants' counsel by March 30, had determined to withdraw from the case and so advised his clients, stating that he would ask leave of the court on April 3, to withdraw as attorney of record. As of April 2, defendant Frank telegraphed the judge personally advising that the request of counsel might be granted and also asked the court for two weeks time to obtain new counsel. On April 3, counsel for defendants formally withdrew from the case, and the suit was set down for trial on April 29, 1959. Defendant was advised of the setting of the case both by his former attorney and apparently by the clerk of the court acting under the court's directions.

On the morning of the day set for trial, defendant Frank appeared in court with his present counsel, whom he had not employed until "3:30 p. m. April 27," by his statement to the court.

Defendant had just filed a motion for continuance and proceeded to strenuously argue that the motion should be granted. Mr. Frank was allowed to take the stand and testify as to the alleged necessity for a continuance. The defendant began to testify that he needed to obtain certain witnesses, all of whom were residents of Kansas. Further, he seemed to be bringing into question the notice he had received from former counsel as to the status of the litigation and it was definitely stated that he thought counsel had in his possession a log of drilling work on the lease. At this point, the court suggested that Mr. A. L. Foster, of Parsons, the former counsel be called to testify concerning these matters. The court's suggestion was carried out and Mr. Foster took the stand. His testimony and records showed defendant Frank had been rather carefully kept advised of the progress of the litigation. Some of the letters have been referred to above. It was further shown that Mr. Foster had never had a drilling log.

Defendant strenuously contends that it was error to allow Mr. Foster to testify as outlined above. It is quite true that the relationship of attorney and client is one of confidence and that communications within such relationship are privileged. But, when the client begins to testify concerning such communications he thereby waives the privilege. The following cases are sufficient together with the authorities cited therein, to dispose of this objection. (*Cranston v. Stewart*, 184 Kan. 99, Syl. ¶ 4, 334 P. 2d 337; *Kelley v. Kelley*, 158 Kan. 719, 728, 150 P. 2d 347.)

During the argument on the motion for a continuance, defendant Frank also showed that on or about April 23, 1959, he had taken certain documents denominated "petitions" to Clarence W. Smith and Isabelle E. Smith, his wife, and to William Evitts and Edith V. Evitts, his wife, and secured their signatures thereto. These parties appeared as plaintiffs in the action. The substance of the "petitions" was that the signers stated that they desired the case dismissed as to themselves as plaintiffs. Defendant also showed that plaintiffs Harry E. Beeson and Ida Beeson were now deceased. As to the Beesons, it was later shown that they had conveyed the real estate owned by them which was covered by the mineral lease and that the real estate was now owned by H. A. Houser, an active plaintiff in the case.

Defendants raised these questions not only on the motion for continuance but throughout the trial. The district court denied the

motion for continuance and refused to abate the progress of the trial because of the above matters. This court is of the opinion that the rulings of the district court in view of the circumstances in this case were entirely correct.

As to the Evitts and Smiths, these parties were represented by an attorney of record authorized to appear for them in the case. They should take any action in the case through him as long as such authorization has not been revoked. Mr. Evitts appeared at the trial and testified that his counsel had been authorized to bring the case and that such authorization had never been revoked, nor had he communicated with counsel in any way (cf. *School District v. School District*, 79 Kan. 407, 99 Pac. 620; 5 Am. Jur. 312, § 86; 7 C. J. S. 901, § 80b). It would appear that no attorney for defendants had anything to do with these transactions with the Evitts and Smiths.

Another good reason to justify the trial court's orders, would seem to be that the Evitts and Smiths were owners of land covered by the mineral lease. They were proper and probably necessary parties to the action, and could have been transferred to the defendants' side of the case, if that had been necessary. (Cf. G. S. 1949, 60-411.)

Beside the argument, that the case should have been dismissed as to the Evitts and Smiths, defendants seem to argue that such "petitions" and the showing of the deaths of the Beesons constituted a defect in parties plaintiff. If this be the theory of defendants, it would appear entirely fallacious. The questions as to the Evitts and Smiths have been discussed adequately above. They are still in the case, and are necessary and proper parties. If it be thought that the Beesons are still parties plaintiff, as shown by the title of the case, it would constitute merely an excess of parties, since they no longer owned land covered by the lease and were in reality not needed as parties. A defect of parties has always been held to exist only when necessary parties have not been brought into the action. Too many parties to an action do not constitute a defect of parties. Originally, our civil code, like all of the codes descended from the Field Code of New York, provided that a defect of parties constituted a ground for demurrer. (G. S. 1868, Ch. 80, sec. 89.) It was held by this court at an early date under the old code that a defect of parties only existed when a necessary party was absent, and that mere excessive parties did not constitute a defect (*McKee*

*v. Eaton,* 26 Kan. 226; *National Bank v. Knoll,* 7 Kan. App. 352, 52 Pac. 619). It will be noticed that in the amendment of the code of civil procedure by removing a defect of parties as a ground of demurrer and providing that it might be the subject of a motion, the civil code now provides, in part, ". . . the court or judge may on motion require the absent parties to be brought in" (G. S. 1949, 60-741). Thus, the code itself now defines a defect of parties as an absence of necessary parties and not a surplus of parties.

Finally, since the Beesons no longer have any interest in the present action, it was perfectly proper to proceed despite their deaths, see G. S. 1949, 60-3205. Moreover, defendants would have waived any defect of parties had any defect actually existed, since the same was not raised by motion or in the pleadings. (*Federal Savings & Loan Ins. Corp. v. Hatton,* 156 Kan. 673, 135 P. 2d 559; *Gibbs v. Central Surety & Ins. Corp.,* 163 Kan. 252, Syl. ¶ 3, 181 P. 2d 498.)

The court has carefully considered all of the twelve, somewhat repetitious, assignments of error, but has found nothing which requires further discussion.

The orders and judgment of the district court should be affirmed. It is so ordered.