**STATE of Missouri, Plaintiff-Respondent,**

v.

**James Delbert FINGERS, Jr., Defendant-Appellant.**

**No. 10661.**

Missouri Court of Appeals, Springfield District.

March 31, 1978.

John D. Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

J. Miles Sweeney, Johnson & Sweeney, Springfield, for defendant-appellant.

TITUS, Judge.

Defendant was initially charged with having committed the felony (§ 556.020)[1] of robbery in the first degree. §§ 560.120 and 560.135. He was represented by appointed counsel and admitted to bail. When defendant was arraigned on the robbery charge April 22, 1976, in the Circuit Court of Greene County, his trial was set for June 7, 1976, but defendant did not appear for trial. Thereafter the 24-year-old defendant was charged with failure to appear at the robbery trial as denounced by § 544.665–1(1).[2] With different appointed counsel and jury waived, defendant was court-tried and found guilty of failure to appear. Defendant's motion for a new trial was denied and he was sentenced to imprisonment for a term of four years with credit of 267 days spent in prison or jail awaiting trial.

On appeal, defendant's first point relied on is: "The [trial] court erred in allowing defendant's attorney [appointed to represent him on the robbery charge] to testify about conversations between himself and defendant on May 25, 1976 since such conversations were privileged communications between attorney and client." Albeit this point is written heedless of the requirements of Rule 84.04(d), we will consider it in light of the following background and that portion of § 491.060 which reads: "The following persons shall be incompetent to testify: . . . (3) An attorney, concerning any communication made to him by his client *in that relation,* or his advice thereon, without the consent of such client; . . ." (Our emphasis).

From the time of arraignment on April 22 (when defendant was advised of his trial setting for June 7) until May 25, defendant's counsel did not see or hear from defendant. During this period counsel wrote to defendant on May 14 and May 19 and several times contacted defendant's wife and defendant's bondsman in an effort to converse with defendant or ascertain his whereabouts. Defendant had not paid the bondsman who, as could be expected, was also interested in finding defendant.

On May 25, after first making telephone contact, defendant and his father appeared at the lawyer's office where the three of them conferred. Defendant's objections that any testimony by counsel relative to this meeting would violate the attorney-client privilege were overruled because, so the trial court opined, the presence and hearing of a third person (defendant's father) destroyed the attorney-client privilege.

Defendant's attorney on the robbery charge testified under subpoena, in sub-

1. References to statutes and rules are to RSMo, V.A.M.S., and to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R.

2. Sec. 544.665–1(1): "In addition to the forfeiture any security which was given or pledged for his release, any person who, having been released pursuant to sections 544.040 to 544.-665, or upon a recognizance or bond pursuant to any other provisions of law, willfully fails to appear before any court or judicial officer as required shall be guilty of an offense and punished as follows: (1) If arrested for or charged with a felony, by a fine of not more than five thousand dollars or imprisoned for not more than five years;".

stance, that during the May 25 conference he iterated that defendant's trial was set for June 7; that he did not tell defendant or defendant's father he would seek a continuance (although, in fact, he subsequently did) but rather told them "that in my opinion the court would not grant us a continuance;" and, contrary to suggestions otherwise, he denied having indicated "to defendant or his father that [defendant] need not show up for the trial date on June 7, 1976." While substantive matters concerning the case were admittedly discussed at the meeting on May 25, what advice was given on these matters and what was said by anyone regarding them was not asked of nor revealed by the lawyer.

■ It is too general and inaccurate to say that all communications between counsel and client are privileged. To be privileged the communication must relate to attorney-client business and not to extraneous matters. *In re Busse's Estate,* 332 Ill.App. 258, 75 N.E.2d 36, 40[5] (1947). It is likewise overly broad to declare that the attorney-client privilege is destroyed because the attorney-client communications were made in the presence and hearing of third persons. There is no destruction of the privilege by reason of the presence of a third person if the circumstances surrounding or necessitating the presence may be such that the communication still retains its confidential character and the attending privilege. *Jayne v. Bateman,* 191 Okl. 272, 129 P.2d 188, 191[2] (1942). If the third person present is the confidential agent of either the attorney or the client the privilege is not destroyed. *McCaffrey v. Estate of Brennan,* 533 S.W.2d 264, 267–268[5] (Mo. App.1976); 81 Am.Jur.2d, Witnesses, § 188, at p. 224; 97 C.J.S. Witnesses § 290, at pp. 819–820. However, the presence of third persons, be they relatives or friends of the client, who are not essential to the transmission of information or whose presence is not reasonably necessary for the protection of the client's interests, will belie the necessary element of confidentiality and vitiate the attorney-client privilege. *Hearn v. Rhay,* 68 F.R.D. 574, 579[9] (E.D.Wash. 1975); McCormick on Evidence 2d Ed. (Hornbook Series) Ch. 10, at p. 189.

■ That the cause was set for trial on June 7 and that defendant's attendance on that date was expected, were routine matters not in the nature of confidential communications arising from the attorney-client relationship. *United States v. Hall,* 346 F.2d 875, 882[6] (2d Cir. 1965), cert. denied 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161. These were facts concerning which defendant had been advised in open court and matters of public record that could be readily ascertained by any interested person. *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 359[5] (D.Mass.1950). Recounting that defendant had been told the trial was scheduled for June 7 and that counsel did not believe a continuance could be obtained did not breach any confidence which the privilege is designed to protect. Furthermore, the presence of defendant's father at the May 25 conference under the circumstances shown, served to invalidate the attorney-client privilege. There was no suggestion that the father was a confidential agent of the defendant, that his presence was reasonably necessary or intended to aid or protect the defendant's interests, or that the father's attendance at the conference was required for any reason which would instill confidentiality into the meeting.

■ Defendant's second point: "The [trial] court erred in admitting State's Exhibits 5 & 8, which were letters sent from [defendant's attorney on the robbery charge] to appellant for the reason that such letters were privileged communications between attorney and client and for the further reason that there was insufficient foundation to show that defendant had received them or they had ever been mailed; and lacking such foundation, they were irrelevant to the issue of appellant's alleged intention to not appear."

Exhibit 8, a letter dated May 19 written by the attorney for defendant and addressed to defendant at his Springfield address (with a copy to the bondsman), contained a reminder that the trial on the

robbery charge was set for June 7. The writing also advised defendant of the forthcoming docket call and stressed the importance that defendant contact the lawyer. Exhibit 5, a letter written by counsel under date of June 8, was addressed to defendant, with copies to the circuit clerk and to defendant at his mother's address. The letter advised that because of defendant's failure to appear at the robbery trial the court had issued a capias warrant for defendant's arrest and forfeited his bond, that the prosecutor had filed a felony complaint charging defendant with failure to appear and that there would be no trial resetting on the robbery charge until defendant was in custody. Counsel also correctly advised of the range of punishment for failure to appear and said if defendant desired to voluntarily surrender or had any "good or legal reason" for failure to appear he should advise the attorney at once.

■ We hold that the admission of Exhibits 5 and 8 into evidence did not permit disclosure of privileged communications between attorney and client. To be privileged, writings which constitute a communication between attorney and client must equate to the general requirements of other privileged communications. Therefore, when the letters contained mere recitations of facts accessible to others or ascertainable from the public court records and constituted a simple transmission of these matters and where the attorney's knowledge derived from sources other than the defendant, the communications were not privileged. *Cranston v. Stewart,* 184 Kan. 99, 334 P.2d 337, 341[6] (1959); 97 C.J.S. Witnesses § 283*l*, at p. 807; 81 Am.Jur.2d, Witnesses, § 203, pp. 236–237.

■ As to the last portion of defendant's second point we find no reversible error. Even assuming, arguendo, that the trial court erred in admitting the two letters into evidence because "there was insufficient foundation to show that defendant had received them or they had even been mailed," it is firmly established that admission of improper evidence is generally harmless if the facts attempted to be shown

are fully and properly provided by other acceptable evidence. *State v. Starkey,* 536 S.W.2d 858, 864[4] (Mo.App.1976); *State v. Kennedy,* 513 S.W.2d 697, 700[4] (Mo.App. 1974). As previously demonstrated, the matters contained in the two letters were otherwise fully and properly provided by other evidence and the information contained in Exhibit 8 was proved to have been relayed to defendant in his tete-a-tete with counsel on May 25.

■ Defendant's third point: "The court erred in admitting State's Exhibit 5 and also in admitting the testimony of [defendant's bondsman on the robbery charge] as to his conduct and defendant's conduct after June 7, 1976, these things being irrelevant in view of the fact that defendant was charged with failure to appear on June 7th only." We disagree with this assertion. As previously noted a copy of Exhibit 5, supra, was sent to defendant in care of his mother's St. Louis address on the day after defendant failed to appear on the robbery charge. The mother telephoned the attorney the day after the letter had been posted and acknowledged its receipt. Defendant's father testified defendant had been residing with his mother "until just the day before [the bondsman first] came" to St. Louis seeking defendant after his failure to appear. The bondsman recounted that he ultimately located defendant in a St. Louis cafe a short distance from the mother's home. This evidence and the testimony of the bondsman relative to his efforts to locate defendant subsequent to his failure to appear at the robbery trial "tended to establish that defendant's failure to appear was deliberate and willful, the result of a plan or design to evade incarceration. We consider it relevant . . . . [c]f. *State v. Musick,* 101 Mo. 260, 271–272, 14 S.W. 212, 214–215 (1890)." *State v. Adams,* 532 S.W.2d 524, 530[17] (Mo.App.1976).

Defendant's fourth point: "The court erred in returning a verdict against defendant since there was insufficient evidence to prove defendant guilty beyond a reasonable doubt, in that: A. He did not leave the state. B. He communicated with his attor-

ney close to the date of trial. C. His failure of communication with his bondsman could be explained by the dispute over the bond premium. D. There was evidence that defendant's attorney directed defendant to leave town and not to return until instructed to do so."

This final point presents nothing for appellate review because it is proffered shorn of all citation of authority. In such a case the point is deemed to have been waived or abandoned. *State v. Halliburton,* 531 S.W.2d 554, 556[5] (Mo.App. 1975). Another reason the point has not been preserved is that it was not contained in the motion for new trial. *State v. Perryman,* 520 S.W.2d 126, 132[15] (Mo.App.1975). Albeit the point and its parts are not for consideration on appeal, we make the following abbreviated observations. The assertion that defendant did not leave the state has no factual foundation and proof cannot be bottomed solely on statements appearing in an appellant's brief. *State v. Robinson,* 484 S.W.2d 186, 188[8] (Mo.1972); *Gonseth v. K & K Oil Company,* 439 S.W.2d 18, 25[12] (Mo.App.1969). The fact that defendant communicated with his attorney close to trial date and failed to communicate with his bondsman for whatever reason, does not constitute any justification for his failure to appear when his case was set for trial. While defendant's father stated that counsel had advised defendant to leave Springfield and not to return until instructed otherwise, this assertion was diametrically opposed to the testimony of the attorney. It is apparent the trial court chose to believe the lawyer's account. In a court-tried criminal case determination of the credibility of witnesses is a matter for the trial court and it is not within the province of an appellate court to pass on their credibility. *State v. Hall,* 525 S.W.2d 364, 365[2, 3] (Mo.App.1975).

The judgment is affirmed.

All concur.