FILED
United States Court of Appeals
Tenth Circuit

June 21, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL HARTLEIB,

    Plaintiff - Appellant,

v.

THE WEISER LAW FIRM, P.C.;
ROBERT WEISER,

    Defendants - Appellees,

and

MONICA ROSS-WILLIAMS,

    Defendant.

No. 20-3146
(D.C. No. 2:19-CV-02099-EFM-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

This case arises from the comprehensive settlement of multiple shareholder

derivative actions filed in Kansas state court in 2011 involving the unsuccessful

merger of the former Sprint Nextel Corporation ("the Sprint litigation"). Appellant,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Robert Hartleib, was a former shareholder in Sprint Corporation and Sprint Nextel and objector to the settlement. Monica Ross-Williams was the nominal plaintiff in one of the underlying derivative actions and Appellees, Robert Weiser and the Weiser Law Firm, P.C. (collectively, "the Weiser Defendants"), represented her in that litigation. After the state court approved the settlement and dismissed the underlying lawsuits, Hartleib sued the Weiser Defendants in Kansas state court, asserting claims stemming from their representation of Ross-Williams in the Sprint litigation. Following removal of the case to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1332 on diversity of citizenship, the district court dismissed Hartleib's claims and entered judgment for the Weiser Defendants. He now appeals that order and the district court's order denying reconsideration and post-judgment leave to amend the complaint.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In 2009, Hartleib retained attorney Bruce Murphy to file a shareholder derivative action on behalf of Sprint Nextel against its directors and officers. Murphy later entered into an agreement with the Weiser Defendants providing that the Weiser firm would be co-counsel for the derivative action. Hartleib met with Weiser and Murphy about the events that precipitated the Sprint litigation and

---

[1] Hartleib also asserted a claim against Ross-Williams for breach of fiduciary duty, which the district court dismissed for lack of personal jurisdiction. Hartleib initially appealed that ruling, but he and Ross-Williams stipulated to the dismissal of that portion of the appeal, and we dismissed the appeal with respect to her.

Hartleib's desire to be appointed as the lead plaintiff. Soon thereafter, the Weiser Defendants informed Hartleib they would not be filing the lawsuit in his name. They then represented Ross-Williams as the lead plaintiff in essentially the same derivative action. Hartleib retained other counsel and filed a derivative action on behalf of Sprint Nextel in his own name.

In 2016, the parties to the Ross-Williams suit and three substantially similar derivative actions reached a comprehensive settlement that prohibited later-filed claims, including Hartleib's, from being prosecuted. The settlement consisted primarily of corporate governance reforms and did not include a financial component that would have benefitted Sprint's shareholders. It also did not disgorge the profits its board of directors and others had made, which the lawsuits alleged nearly led to Sprint's demise. In the settlement process, the Weiser defendants sought approval for $4.25 million in attorney's fees to be split among the law firms involved in the cases that were part of the settlement.

Hartleib, who did not participate in the settlement, objected both to the proposed settlement and the fee request, arguing that the settlement's corporate governance reforms were illusory and that the fees requested were excessive relative to the work performed and the results achieved. In those filings, he complained about the Weiser Defendants' decision not to use him as the lead plaintiff in the Ross-Williams suit. After considering his objections and inspecting the Weiser Defendants' billing records, the state district court concluded that some settlement provisions had meaningful value and approved the settlement, but it reduced the

3

attorney's fees award to $450,000, finding that the Weiser Defendants' billing records were not accurate or credible, and concluding that the results obtained were not commensurate with the fee requested.

Several months later, while Hartleib's appeal of the order approving the settlement was pending, it came to light that a disbarred attorney had billed several thousand of the hours reflected on the Weiser Defendants' statements. The Kansas Court of Appeals remanded the case to the district court for reevaluation of the appropriate attorney's fees. On remand, the district court reaffirmed the settlement and concluded that the revelation supported the original reduction in fees. The Kansas Court of Appeals affirmed and the Kansas Supreme Court denied Hartleib's petition for review.

Meanwhile, in an unrelated shareholder derivative lawsuit filed with the Weiser Defendants' assistance in federal court in Georgia—the Equifax litigation—Hartleib, as a nonparty to the suit, sought leave to file an amicus brief opposing the Weiser Defendants' appointment as lead counsel based on their use of the disbarred attorney and an unfit lead plaintiff in the Sprint litigation, and his belief that the Weiser Defendants were more interested in obtaining large fee awards than helping their clients. In response, the Weiser Defendants argued that Hartleib was not impartial, as required for amicus status, and that he was attempting to gain amicus status in an effort to harass the Weiser firm and exact retribution against it for refusing to meet his demands for money in connection with the Sprint litigation. To provide context for those assertions, the Weiser Defendants outlined the history of

4

their relationship with Hartleib and explained Weiser's reasons for concluding Hartleib would not be an appropriate lead plaintiff, including that during their 2009 conversation, Hartleib proposed that he would share in any attorney's fees the Weiser Defendants might recover ("the fee-splitting proposal").

Hartleib then filed this suit against the Weiser Defendants, asserting claims for legal malpractice, breach of fiduciary duty, violations of the Kansas Consumer Protection Act, and abuse of process. The only claim relevant to this appeal is the legal malpractice/breach of fiduciary duty claim based on the Weiser Defendants' disclosure of privileged communications in their opposition to Hartleib's motion to file an amicus brief in the Equifax litigation. In particular, he alleged the Weiser Defendants committed malpractice by

> [u]sing Mr. Hartleib's communications with them, which were protected by the attorney-client privilege, against him in connection with the underlying [Sprint] litigation . . . . In addition, sharing privileged communications in the unrelated [Equifax litigation], and proffering falsehoods relating to said communications in a willful attempt to harm Mr. Hartleib and obfuscate their duplicitous acts.

R. Vol. I at 14. The complaint did not specifically identify the protected communications the Weiser Defendants allegedly disclosed.

The court granted the Weiser Defendants' motion to dismiss all of Hartleib's claims on various grounds. It dismissed the improper disclosure claim pursuant to Fed. R. Civ. P. 12(b)(6), concluding the claim failed as a matter of law because (1) Hartleib waived the privilege by disclosing portions of the 2009 conversation in his objections to the settlement of the Sprint litigation and by attaching related

5

e-mails from Weiser to Hartleib and Murphy to those filings; and (2) the complaint did not allege improper disclosure of any communications beyond the scope of the waiver.

Pursuant to Fed. R. Civ. P. 59(e), Hartleib filed a motion for reconsideration of the dismissal order and also asked for leave to amend his complaint to allege legal malpractice by wrongful disclosure in the Equifax litigation of the fee-splitting proposal, which he claimed was beyond the scope of the waiver. The district court denied the motion to reconsider, concluding that, in addition to waiving the privilege by disclosing some of the 2009 communications in his filings in the Sprint litigation, Hartleib also waived the privilege in his filings in the Equifax litigation, and those waivers covered the Weiser Defendants' disclosures in their responsive filings in the Equifax litigation. The court also denied the request for leave to amend as both untimely and because amendment would be futile given that the waiver encompassed the proposed amendment.

## II. DISCUSSION

### A. Standard of Review

We review de novo the dismissal of Hartleib's complaint under Rule 12(b)(6) for failure to state a claim, applying the same standards that applied in the district court. *See Cnty. of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

6

550 U.S. 544, 570 (2007)).  In conducting our review, we accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in his favor.  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  Our duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  Dismissal for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged."  *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (internal quotation marks omitted).

We review the denial of a Rule 59(e) motion for abuse of discretion.  *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018). A district court abuses its discretion in denying reconsideration only if its decision was "arbitrary, capricious, or whimsical."  *Id*. at 1203 (internal quotation marks omitted).  Thus, we will not reverse the district court's order unless we "have a definite and firm conviction that the . . . court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Id.* (internal quotation marks omitted).

## B.  Conversion of Motion to Dismiss to Motion for Summary Judgment

Hartleib first contends that the district court erred by not converting the motion to dismiss to a motion for summary judgment because it considered exhibits to the motion in ruling on it.  We disagree.

7

A Rule 12(b)(6) motion must be treated as a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Conversion to a summary judgment motion is not required, however, when the district court considers (1) documents the complaint incorporates by reference; (2) documents referred to in the complaint that are central to the plaintiff's claim and whose authenticity is not challenged; and (3) "matters of which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186, 1194 (10th Cir. 2010) (internal quotation marks omitted). Because a court may consider facts subject to judicial notice without treating a motion to dismiss as a motion for summary judgment, a court may consider documents reflecting facts that "are a matter of public record" as long as it considers those documents "to show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). This includes another court's publicly filed records "concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

The exhibits to the motion to dismiss are all pleadings and docket entries from the Sprint and Equifax litigation—publicly filed court documents that show what privileged communications Hartleib disclosed in those filings, and which the court here considered for their contents, not the truth of the matters asserted in the filings. Hartleib referred to some of those documents in the complaint and he did not dispute their authenticity or centrality to his claims. He also referred to the contents of several of the exhibits in his opposition to the motion, and he asked the court to

8

consider the additional documents (also court documents) he attached to the opposition. *See, e.g.,* R., Vol. V at 1167 (encouraging the court to "consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference").

Accordingly, the court properly considered the exhibits in ruling on the motion without converting it to a motion for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (district court properly considered documents that were referred to in the complaint which "the parties invited" the court to consider in ruling on motion to dismiss); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (district court properly considered an indisputably authentic document attached to the motion to dismiss where the document was central to plaintiff's claim and plaintiff referred to it in both the complaint and the opposition to the motion to dismiss).

We also reject Hartleib's related contention that the district court's failure to convert the motion to a motion for summary judgment violated the requirement in Rule 12(d) that the court give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Aplt. Br. at 14 (quoting Fed. R. Civ. P. 12(d)). It is true that before conversion, the district court must "give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56." *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000) (internal quotation marks omitted). But that requirement only applies when the court

9

decides to convert a motion to dismiss to one for summary judgment. The district court did not do so here, so the notice-and-opportunity-to-respond requirement did not apply.

## C. Dismissal of Disclosure-Based Malpractice Claim

Hartleib next contends that the district court erred by dismissing the disclosure-based malpractice claim on the ground that he waived any privilege he had in his 2009 communications with Weiser by voluntarily disclosing some of those communications in his objection to the settlement and in his filings in the Equifax litigation. Specifically, he maintains that his waiver covered only the communication about Weiser's decision not to use him as the lead plaintiff in the Sprint litigation and did not include the portion of the conversation about the fee-splitting proposal. We are not persuaded.

In a diversity case such as this one, decisions about the applicability and scope of a privilege are governed by state law. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). Kansas law thus controls this issue.

Under Kansas law, "[a] person who would otherwise have a privilege . . . to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person . . . has . . . made disclosure of any part of the matter." Kan. Stat. Ann. § 60-437. This statute codifies the subject-matter waiver the Kansas Supreme Court had already adopted in *Cranston v. Stewart*, 334 P.2d 337 (Kan. 1959), and *Houser v. Frank*, 350 P.2d 801 (Kan. 1960). In *Cranston*, the Kansas Supreme Court held that a client's testimony concerning

10

some terms of a contract he claimed was privileged waived any privilege as to the entire contract, explaining that "[t]he client cannot be allowed to disclose as much as he pleases and at the same time assert privilege to withhold the remainder." 334 P.2d at 341. And in *Houser*, the court explained that a client waives the privilege in an attorney-client communication "when [he] begins to testify concerning such communications." 350 P.2d at 804; *see also State ex rel. Stovall v. Meneley,* 22 P.3d 124, 141 (Kan. 2001) (recognizing that a client's disclosure of a communication eliminates any privilege he might have had in it, and citing with approval *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987), which held that "revelation of portions of communications that are private between attorney and client waives the privilege concerning the residue of the communication"). Thus, under Kansas law—both statutory and decisional—a partial waiver of a privileged communication constitutes a waiver of the privilege as to the entire communication.

Relying on *Houser*, the district court concluded in the dismissal order that Hartleib waived any privilege he had in his 2009 communications with Weiser when, in his objection to the settlement in the Sprint litigation, he criticized Weiser's refusal to file a Sprint derivative suit in his name and then disclosed confidential e-mails discussing that decision. The court reiterated that conclusion in its order denying reconsideration, noting that Hartleib made similar disclosures in his filings in the Equifax litigation, and that in both filings he "used his former attorney-client relationship with the Weiser Defendants to bolster the credibility of his various accusations against [them]." R., Vol. V at 1429. The court concluded that by doing

11

so, he waived any privilege in the "'matter' of the Weiser Defendants' decision to use a different named plaintiff for the Sprint litigation," which included the fee-splitting proposal. *Id.*[2] The district court held that once Hartleib made his partial disclosures and used them against the Weiser Defendants in his filings in the Sprint and Equifax litigations, "fairness entitled the Weiser Defendants to respond." *Id.*

We agree with the district court's determination. The pleadings the Weiser Defendants attached to the motion establish that Hartleib's discussions with the Weiser Defendants regarding his desire to be the named plaintiff and the fee-splitting proposal were part of one conversation about who would be the lead plaintiff in the Sprint shareholder suit. Hartleib's disclosure of part of that conversation in his filings in the Sprint and Equifax litigation operated as a waiver that extended to the undisclosed parts of the conversation because the disclosed and undisclosed information concern the same subject matter. *See* § 60-437; *Houser*, 350 P.2d at 804.[3] To conclude otherwise would violate basic principles of fairness because it

---

[2] The Weiser Defendants had explained in their opposition to Hartleib's amicus filings in the Equifax litigation that the fee-splitting proposal was one of their reasons for that decision.

[3] We note that under Fed. R. Evid 502(a), when a client voluntarily waives the attorney-client privilege in a federal court proceeding, the waiver extends to undisclosed information if the disclosed and undisclosed information "concern the same subject matter" and "ought in fairness be considered together." This federal evidence rule supports the conclusion that Hartleib's partial disclosures in the Equifax litigation operated as a waiver of the privilege in that litigation and covered the additional information the Weiser Defendants disclosed in their responsive pleadings. The same would be true if the Weiser Defendants had made similar responsive disclosures in their filings in the Sprint litigation. *See* Kan. Stat. Ann.

12

would allow him "to disclose as much as he pleases and at the same time assert privilege to withhold the remainder." *Cranston*, 334 P.2d at 341. And because his disclosure-based malpractice claim was based on the Weiser Defendants' disclosures about that conversation, the district court correctly concluded that he could not prevail on the facts as alleged and that his claim thus failed as a matter of law.

In so concluding, we reject Hartleib's contention that the district court erred by dismissing the claim on the ground that the complaint did not allege improper disclosure of any communications beyond the scope of the waiver. He maintains that "by requiring [him] to allege [the] specific communications" the Weiser Defendants disclosed, the court held him to "a heightened pleading standard" inconsistent with the federal notice pleading standard, and "made an improper factual determination that he could not state a claim for the disclosure of privileged communications." Aplt. Br. at 20. As we understand it, his argument is that the district court failed to apply the Rule 12(b)(6) plausibility standard and that his claim could not be decided as a matter of law under that standard.[4]

But the district court did not make any factual findings here. There was no factual dispute about who disclosed what and when, and Hartleib acknowledged that he waived the privilege, at least as to the specific information he had disclosed. The

---

§ 60-426a(a) (defining the scope of a waiver made in a court proceeding in language substantially identical to Rule 502).

[4] To the extent this argument is a re-framed challenge to the district court's consideration of the exhibits to the motion to dismiss, we have already explained why the argument fails.

only question the district court decided was a purely legal one: whether the Weiser Defendants' subsequent disclosures fell within the scope of the Hartleib's waiver under Kansas law. And as we have already explained, the district court correctly concluded that Hartleib's waiver covered the entire conversation and that Hartleib's claims therefore failed as a matter of law.

## D. Denial of Rule 59(e) Motion to Reconsider

Hartleib's final claim is that the district court erred by denying his request in the Rule 59(e) motion for leave to amend his complaint. We reject this claim too.

Filing an amended complaint after judgment has entered is impermissible "until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (internal quotation marks omitted). To prevail on his Rule 59(e) motion, Hartleib needed to show that the court misapprehended the law, the facts, or his position. *See Alpenglow*, 894 F.3d at 1203. To do so, he had to show: (1) an intervening change in the controlling law; (2) new, previously unavailable evidence; or (3) the need to correct clear error or prevent manifest injustice. *See id.* A Rule 59(e) motion may not be used to "advance arguments that could have been raised in prior briefing." *Id.* Thus, when the party seeking the amendment "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.* (internal quotation marks omitted).

14

In his motion, Hartleib argued that the with-prejudice dismissal of his claims resulted in manifest injustice and, relying on the general rule that leave to amend should be freely allowed under Fed. R. Civ. P. 15(a) when justice so requires, sought leave to amend his complaint to allege an additional instance of malpractice—the Weiser Defendants' disclosure of the fee-splitting proposal. The district court denied leave to amend both because Hartleib could have but failed to seek amendment earlier and because amendment would be futile given that the disclosure of the fee-splitting proposal fell within the scope of his waiver.

Again relying on Rule 15(a)'s presumption favoring granting leave to amend, Hartleib maintains that the district court abused its discretion by denying his motion to amend. But the liberality of Rule 15 no longer applies after judgment has been entered, *The Tool Box*, 419 F.3d at 1087-88, and Hartleib does not dispute that he could have included the allegation regarding the disclosure of the fee-splitting proposal in his original complaint or sought leave to amend the complaint to add that allegation before judgment was entered. That alone was a sufficient basis for the district court's ruling. *See id.* at 1088 (recognizing that denying post-judgment leave to amend is appropriate when the movant "had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave"); *see also Alpenglow*, 894 F.3d at 1203 ("untimeliness alone is a sufficient reason to deny leave to amend when the party filing the motion has no adequate explanation for the delay" (internal quotation marks omitted)). And, as we have already explained, the district court correctly concluded that the Weiser Defendants' disclosure of the

15

fee-splitting proposal fell within the scope of Hartleib's prior waiver. We thus conclude the district court did not abuse its discretion in ruling that the proposed amendment would be futile.

## III. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge